# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND
# BALTIMORE DIVISION

National Association of Diversity Officers in Higher Education, et al.,

    Plaintiffs,

v.

Donald J. Trump, in his official capacity as President of the United States, et al.,

    Defendants.

Civil Action No. 1:25-cv-333-ABA

## SUPPLEMENTAL DECLARATION OF TODD WOLFSON

I, Todd Wolfson, declare as follows:

1. I am over eighteen years old, of sound mind, and fully competent to make this declaration. I also have personal knowledge of the factual statements contained herein.

2. As a correction to my February 12, 2025, declaration, I have been the President of the American Association of University Professors ("AAUP") since June 2024, not October 2024, and have previously held various leadership roles in the Rutgers chapter of AAUP, AAUP-AFT, including as its President and Vice President.

3. As I explained in my February 12, 2025, declaration, AAUP members have continued to experience harms flowing from the challenged executive orders, *Ending Radical and*

*Wasteful Government DEI Programs and Preferencing* (January 20, 2025) and *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* (January 21, 2025).

4. For example, one AAUP member is a professor at a university in Virginia with a National Science Foundation ADVANCE: Organizational Change for Gender Equity in STEM Academic Professions (NSF ADVANCE) grant to research potential disparities affecting women in science. After requesting accommodations for traveling to a conference as part of their grant work, the professor received an email on February 6, 2025, from their Program Officer with NSF notifying them that the NSF employee "cannot make the determination" regarding the travel until it is determined that "the activity is aligned with the administration's executive orders . . . ." The e-mail referred the professor to the NSF guidance, available online at https://new.nsf.gov/executive-orders, which was issued to implement recent executive orders, including the Orders at issue here.

5. The e-mail also quoted the NSF guidance, which provided, in part: "[A]ll NSF grantees must comply with these executive orders, and any other relevant executive orders issued, by ceasing all non-compliant grant and award activities . . . . [i]n particular, this may include, but is not limited to conferences, trainings, workshops, considerations for staffing and participant selection, and any other grant activity that uses or promotes the use of diversity, equity, inclusion and accessibility (DEIA) principles and frameworks or violates federal anti-discrimination laws." Because the professor was told NSF cannot approve their travel request, because of uncertainty about their grant, this AAUP member's travel and other grant-related activities that an enforcing entity could deem "non-compliant grant and award activities" are frozen indefinitely.

6. On February 18, 2025, I became aware of a stop work order issued to another AAUP member, which explicitly identified the Orders at issue here as the basis for decision. That

member is a professor at the University of Texas at Austin. This member informed me that, on January 29, 2025, the university's Office of Sponsored Projects received an e-mail "stop work order" about a subaward from the National Academy of Sciences (NAS). The member's project, which focused on equity of access to crucial services and goods, was funded by a National Academy of Sciences (NAS) grant that uses federal funds from the Department of Transportation. The letter states: "The National Academy of Sciences (NAS) is hereby issuing University of Texas at Austin this notice of Termination for Convenience effective as of the date of this letter for all work associated with the above referenced Subaward. This action is not a judgment of your work performance under the Subaward. However, NAS has determined to take certain actions with respect to federally funded contracts following the issuance of the Executive Order on *Ending Radical and Wasteful Government DEI Programs and Preferencing* (January 20, 2025) and *Ending Illegal Discrimination and Restoring Merit-Based Opportunity* (January 21, 2025)." The letter states that "[s]ubawardee is directed to immediately stop all work being performed under the referenced Subaward and must inform all lower-tier subcontractors that they too must stop all work and refrain from incurring any costs beyond the date of this letter."

    7. On February 18, 2025, I became aware of an email sent to an AAUP member who is a professor at the University of Connecticut. The member works on a project to broaden diversity in the Science Technology Engineering and Mathematics (STEM) workforce. This project is conducted in partnership with Auburn University and is funded by NSF ADVANCE. On January 31, 2025, this member received an email from the Principal Investigator—the faculty member in charge—of that project "to pause project activities until we receive further guidance from NSF and Auburn."

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on February 18, 2025

By: *Todd Wolfson*
Todd Wolfson (Feb 18, 2025 23:07 EST)

Todd Wolfson