**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| NATIONAL ASSOCIATION OF DIVERSITY OFFICERS IN HIGHER EDUCATION, *et al.*,<br><br>    *Plaintiffs*,<br><br>  v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>    *Defendants* | Case No. 25-cv-0333-ABA |

**MEMORANDUM OPINION AND ORDER DENYING
MOTION TO STAY INJUNCTION PENDING APPEAL**

The First Amendment prohibits the government from making any law "abridging the freedom of speech." U.S. Const., amdt. I. The government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015) (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95 (1972)). Such "[c]ontent-based laws" are "presumptively unconstitutional." *Id.* And although "speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter," *id.* at 169, the most "egregious form of content discrimination" is "[g]overnment discrimination among viewpoints—or the regulation of speech based on 'the specific motivating ideology or the opinion or perspective of the speaker.'" *Id.* at 168 (quoting *Rosenberger v. Rector and Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)).

As the Court explained in its February 21 opinion granting (in part) Plaintiffs' motion for a preliminary injunction, the specific executive order provisions at issue in this case run afoul of these protections, and do so on their face, meaning the provisions

themselves, among other things, expressly "draw[] distinctions based on the message a speaker conveys." *Id.* at 163; *see* ECF No. 44 at 45–48 (Certification Provision), 49–53 (Enforcement Threat Provision), *see also id.* at 42–43 (holding, with respect to the Termination Provision, that Plaintiffs have demonstrated a likelihood of success based on their Fifth Amendment vagueness claim). They punish, or threaten to punish, individuals and institutions based on the content of their speech, and in doing so they specifically target viewpoints the government seems to disfavor. ECF No. 44 at 45–53. The provisions target not only purely private persons who have no nexus to federal funding, but also "seek to leverage funding to regulate speech" of individuals and institutions that happen to contract with (or receive grants from) the federal government, *Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 570 U.S. 205, 214–15 (2013), and they terminate benefits or threaten punishment "because of [individuals'] speech on matters of public concern," *Bd. of Cnty. Comm'rs, Wabaunsee Cnty., Kan. v. Umbehr*, 518 U.S. 668, 675 (1996) (emphasis omitted), which constitute independent First Amendment violations. ECF No. 44 at 47–49. The specific provisions at issue also likely violate the due process clause of the Fifth Amendment. *Id.* at 38–43, 53–55. After all, the First and Fifth Amendment analyses in this case merge in several ways, because laws that "interfere[] with the right of free speech or of association" must pass a "stringent vagueness test," *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982), for such a law to give citizens sufficient notice of "what is prohibited, so that [they] may act accordingly," and for such a law to provide sufficiently "explicit standards" to avoid "arbitrary and discriminatory enforcement." *Id.* (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972)).

Because Plaintiffs in this case have shown a strong likelihood of success on the merits with respect to at least their free speech and vagueness claims, and have shown that permitting the government to implement the challenged provisions would cause substantial irreparable harm, the Court issued a preliminary injunction, prohibiting the implementation of the three challenged provisions, other than with regard to certain investigation-related portions of the Enforcement Threat provision. ECF No. 45 (preliminary injunction); ECF No. 44 (memorandum opinion). Defendants have appealed the injunction, ECF No. 47, and now seek to stay the preliminary injunction while the appeal proceeds. ECF No. 48 ("Motion to Stay").

Because the motion-to-stay standard is, in critical respects, the inverse of the preliminary-injunction standard, the Court has largely already explained why a stay would be inappropriate. For those reasons, and the additional reasons explained below, the Court will deny Defendants' Motion to Stay. The full factual background and procedural history of this case is outlined in detail in the memorandum opinion. *See* ECF No. 44.

## I.    DISCUSSION

### A.    Legal Standard

A preliminary injunction is not stayed after an appeal is taken "[u]nless the court orders otherwise." Fed. R. Civ. P. 62(c); *see also* Fed. R. App. 8(a)(1) ("A party must ordinarily move first in the district court for . . . an order suspending . . . an injunction while an appeal is pending."). There are four factors relevant to the issuance of a stay pending appeal: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties

interested in the proceeding; and (4) where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987). The first two factors are "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). The party seeking a stay carries the burden of demonstrating that these factors justify a stay. *Dep't of Educ. v. Louisiana*, 603 U.S. 866, 868 (2024) ("[T]he burden is on the Government as applicant to show, among other things, a likelihood of success . . . and that the equities favor a stay.").

As noted, the standard for a stay pending appeal is similar to the standard for a preliminary injunction. *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) ("A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."); *see also Nken*, 556 U.S. at 434 ("There is substantial overlap between these [factors governing issuance of a stay pending appeal] and the factors governing preliminary injunctions.").

### B.    Analysis

Defendants argue these factors weigh in favor of a stay in this case. They contend they have demonstrated a likelihood of success on the merits, as outlined in their Memorandum in Opposition to Plaintiffs' Motion for a Temporary Restraining Order and/or Preliminary Injunction. ECF No. 48-1 at 3 (citing ECF No. 35 at 5–22). They also assert that Plaintiffs' harms are "purely speculative," but the injunction "threatens irreparable injuries" to the government and "improperly impedes" agencies from "implementing the President's stated priority of enforcing the antidiscrimination laws." *Id.* (citing *Maryland v. King*, 567 U.S. 1301, 1013 (2012)). Defendants alternatively argue that if the Court keeps the injunction in place, it should "stay the nationwide

application of the injunction," *i.e.*, limit the application to Plaintiffs and their members.[1] *Id.* at 4 (citing *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024)).

Plaintiffs, in turn, argue that just as a preliminary injunction is warranted for the reasons the Court explained in its February 21 memorandum opinion, the same reasons counsel denial of a stay pending appeal, and further emphasize that there are no changed circumstances since entry of the preliminary injunction that would justify the "extraordinary remedy" of a stay pending appeal. ECF No. 53 at 3–5 (quoting *Nken*, 556 U.S. at 428). As for Defendants' alternative argument about the application of the injunction to non-parties, Plaintiffs contend that the relevant factors, including squarely applicable caselaw from the Fourth Circuit, support the injunction as entered. *Id.* at 9 (citing *HIAS, Inc. v. Trump*, 985 F.3d 309 (4th Cir. 2021); *see also* ECF No. 60 ("Plaintiffs' Notice of Supplemental Authority") (citing *CASA, Inc. v. Trump*, No. 25-1153, 2025 WL 654902 (4th Cir. 2025)).

Applying the *Nken* standards for a motion to stay pending appeal, the Court concludes that all the factors militate against a stay, and against narrowing the preliminary injunction to Plaintiffs and their members. Defendants have not established a strong likelihood of success on the merits. Indeed, because Defendants point only to their opposition brief as support for this first factor, the Court has already considered—and rejected—the argument that Defendants are likely to succeed on the merits. *See* ECF No. 44 at 15–55 (Section III, "Likelihood of Success on the Merits"). That leaves the

---

[1] As the Court noted in its memorandum opinion, the term "nationwide" is a misnomer and "[t]he relevant question is whether, in light of the claims and Plaintiffs' showing of likelihood of success on the merits, including similarly situated non-parties within the scope of an injunction would be appropriate." *See* ECF No. 44 at 60.

government's argument that the preliminary injunction should be stayed because it harms "intra-executive policy implementation by enjoining the President's policy directives to federal agencies" and improperly impedes federal agencies from enforcing antidiscrimination laws. ECF No. 48-1 at 3. As the Court explained in its memorandum opinion granting the preliminary injunction, the executive branch is obviously entitled to have policy goals and to pursue them. But in pursuing those goals it must comply with the Constitution, including, as relevant here, the Free Speech Clause of the First Amendment, and the Due Process Clause of the Fifth Amendment. *See* ECF No. 44 at 3, 48.

And although the aforementioned factors are the "most critical," *Nken*, 556 U.S. at 434, the remaining factors (balance of the harms and the public interest) also weigh against a stay in this case. As the Court has explained, although the case is presently in its preliminary stages, several of the challenged provisions clearly, on their face, violate First Amendment free speech protections. ECF No. 44 at 59 (noting that "chilling of unquestionably protected speech" is a serious harm attributable to the challenged provisions). And when balancing the harms, the chilling of the exercise of fundamental First Amendment rights weighs strongly in favor of the preliminary injunction, and against a stay pending appeal. The recognized harm of chilled speech is precisely why, for instance, there are relaxed standing and ripeness requirements in First Amendment cases. *See, e.g.*, *Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013) (explaining that standing requirements are "somewhat relaxed" in First Amendment cases). Likewise, Plaintiffs have shown a likelihood of success on the merits based on the unconstitutional vagueness of the challenged provisions. *See Mills v. District of Columbia*, 571 F.3d 1304, 1312 (D.C. Cir. 2009) ("[T]he loss of constitutional freedoms, 'for even minimal periods

6

of time, unquestionably constitutes irreparable injury.'") (citation omitted). Defendants have offered no new evidence or arguments that justify a reassessment of the balance of the harms or the public interest considerations in this case.

Finally, Defendants argue that even if a stay pending appeal is not justified, the Court should stay the injunction insofar as it bars application of the enjoined provisions to parties other than Plaintiffs and their members. ECF No. 48-1 at 4 (citing *Gill v. Whitford*, 585 U.S. 48, 66 (2018); *Lewis v. Casey*, 518 U.S. 343, 360 (1996); *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979); *Trump v. Hawaii*, 585 U.S. 667, 717 (2018) (Thomas, J., concurring); and *Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921, 927 (2024) (Gorsuch, J., concurring)). Plaintiffs specifically explain why *Labrador* is inapposite, and further argue that, "as this Court rightly concluded, this case is on all fours with the Fourth Circuit's decision in *HIAS, Inc. v. Trump*, 985 F.3d 309 (4th Cir. 2021)." ECF No. 53 at 9.

As the Court previously explained in identifying the appropriate contours of a preliminary injunction, an injunction that extends to non-parties may be particularly "appropriate" where, as here, "the government relies on a 'categorical policy,' and when the facts would not require different relief for others similarly situated to the plaintiffs." *HIAS*, 985 F.3d at 326 (quoting *Roe v. Dep't of Def.*, 947 F.3d 207, 231 (4th Cir. 2020)). And here, because Plaintiffs have shown a likelihood of proving a "constitutional violation," the Court is "required to tailor the scope of the remedy to fit the nature and extent of the constitutional violation." *Hills v. Gautreaux*, 425 U.S. 284, 293–94 (1976) (citations and internal quotation marks omitted); *see also, e.g.*, *Trump v. Int'l Refugee Assistance Project*, 582 U.S. 571, 582 (2017) (affirming preliminary injunction insofar as it applied to parties "similarly situated" to the plaintiffs, including any "foreign nationals

who have a credible claim of a bona fide relationship with a person or entity in the United States," and only holding that the injunction was overly broad insofar as it also applied to "foreign nationals abroad who have no connection to the United States at all").

The government's cited cases do not counsel otherwise. *Gill*, for example, was a gerrymandering case; there, whether a particular plaintiff was harmed by a particular gerrymander, or could prove a constitutional violation, was "district specific." 585 U.S. at 66; *see also id.* at 67 ("Here, the plaintiffs' partisan gerrymandering claims turn on allegations that their votes have been diluted. That harm arises from the particular composition of the voter's own district, which causes his vote—having been packed or cracked—to carry less weight than it would carry in another, hypothetical district. Remedying the individual voter's harm, therefore, does not necessarily require restructuring all of the State's legislative districts. It requires revising only such districts as are necessary to reshape the voter's district—so that the voter may be unpacked or uncracked, as the case may be."). In *Lewis*, which related to incarcerated persons' access to legal research materials and related support, the reason the Supreme Court held that the plaintiffs there were not entitled to "systemwide relief" was because plaintiffs had only proven "actual injury on the part of only one named plaintiff," specifically tied to whether he was entitled to "special services that [he] would have needed, in light of his illiteracy, to avoid dismissal of his case." 518 U.S. at 358–60. In *Califano*, the question was the propriety of certification under Rule 23 of a "nationwide class," and there the Supreme Court held that it was, under the circumstances presented in that case. 442 U.S. at 702–03.

As to the concurring opinions the government cites from *Labrador v. Poe* and *Trump v. Hawaii*, neither compels narrowing the preliminary injunction here. As for Justice Gorsuch's opinion concurring in the grant of a stay in *Labrador*, the principal deficiency of the underlying injunction that Justice Gorsuch identified was the fact that it extended to every aspect of the Idaho statute at issue, "even though no party before the court" had challenged most aspects or applications of the statute. 144 S. Ct. at 921–22 (Gorsuch, J., concurring). Justice Gorsuch's *Labrador* concurrence advises lower courts to consider a number of factors in deciding whether an injunction is justified in a given case, and in shaping the appropriate contours of such injunctions. *See, e.g.*, *id*. at 927–28. In addition, in a concurring opinion in *Trump v. Hawaii*, Justice Thomas expressed a general skepticism of district courts' authority to enter so-called "universal" injunctions at all. 585 U.S. at 713 (Thomas, J., concurring). The Court has carefully considered those factors and recognizes that preliminary injunctions generally encompass, and should encompass, only parties to a given litigation. But, as the Court has explained, the specific provisions included within the scope of the injunction have the effect of infringing on core constitutional protections, including freedom of speech and the right to notice and avoidance of arbitrary enforcement under the Fifth Amendment. *See, e.g.*, ECF No. 44 at 59. The need to encompass nonparties within the scope of this Court's injunction in this case arises from the facial constitutional deficiencies in the enjoined provisions themselves. The only way to effectively prevent these constitutional violations and mitigate their irreparable harm is to include non-parties within the scope of the preliminary injunction.

Finally, the Fourth Circuit's decision last week in *CASA, Inc. v. Trump* further supports denial of a stay. In that case, the Fourth Circuit, applying the "traditional

factors laid out in *Nken v. Holder*," denied a motion seeking a partial stay of a preliminary injunction pending appeal. *CASA*, 2025 WL 654902, at *1. The Fourth Circuit also noted that "[n]otwithstanding . . . reservations" expressed in "separate writings by Supreme Court Justices," the Supreme Court has "allowed most universal injunctions to remain in effect during the course of litigation." *Id.* The *CASA* court specifically observed that the executive action challenged there was a "categorical policy" as to which the "facts would not require different relief for others similarly situated," and that an injunction limited to the parties "would be unworkable in practice and thus fail to provide complete reliefs to the plaintiffs." *Id.* (citations omitted). As explained above, those considerations apply with equal force here.

The executive branch must, of course, comply with the Constitution, including the Free Speech Clause of the First Amendment and the Due Process Clause of the Fifth Amendment. The Court's preliminary injunction is "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," and has been "mold[ed] . . . to meet the exigencies of the particular case." *HIAS*, 985 F.3d at 326 (quoting *Roe*, 947 F.3d at 231).

## II.   CONCLUSION

For the foregoing reasons, Defendants' Motion to Stay Injunction Pending Appeal, ECF No. 48, is DENIED.


Date:  March 3, 2025                          _____/s/_____
                                             Adam B. Abelson
                                             United States District Judge