IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| National Association of Diversity Officers in Higher Education, *et al.*,<br><br>            Plaintiffs,<br><br>    v.<br><br>Donald J. Trump, in his official capacity as President of the United States, *et al.*,<br><br>            Defendants. | Civil Action No. 1:25-cv-333-ABA |

**PLAINTIFFS' REPLY IN FURTHER SUPPORT OF THEIR**
**MOTION TO CLARIFY PRELIMINARY INJUNCTION ORDER**

## **TABLE OF CONTENTS**

Page

ARGUMENT ..................................................................................................................................2

I. The PI Order prevents non-named agencies from engaging in otherwise enjoined viewpoint discrimination. ...........................................................................................................................2

II. Rule 65(d) provides relief as to all agencies who act in privity with Defendants.....................4

III. There is no Article III or prudential barrier to the Court granting this relief. .........................10

CONCLUSION..............................................................................................................................12

This Court has the authority to enjoin those within the executive branch who implement policies the Court has found to be likely unconstitutional, as it did in its order of February 21. Order Granting Mot. for Prelim. Inj., ECF No. 45 ("PI Order"). The only way to properly effectuate the relief the Court granted is to prevent non-named agencies that act in concert or participation with named Defendants from unconstitutionally chilling constitutionally protected speech pursuant to the Enjoined Provisions. Rule 65(d) of the Federal Rules of Civil Procedure allows exactly that.

The Government's strawmen do not withstand scrutiny. Contrary to the Government's suggestion, Plaintiffs have never sought to enjoin the President. They did not seek that relief in their complaint, in their motion for a preliminary injunction, or in their motion to clarify. They do not seek that relief today. There is no separation of powers concern with granting the relief Plaintiffs seek; the Government's argument in opposition to the motion to clarify is a rehash of their failed argument against Plaintiffs' motion for a preliminary injunction.

Plaintiffs *have* sought to prevent executive branch officials who have been tasked by the President, his Attorney General, and his Director of the Office of Management and Budget to effectuate a nationwide scheme to chill private entities from engaging in constitutionally protected speech. That scheme has already been frighteningly successful. In the face of government agencies scouring public websites and grant applications for any mention of words like "equity" and "diversity"—concepts that were long considered vital to our civil rights laws and policies—private entities around the country have started to censor themselves or face the immediate or imminent loss of federal funds or other enforcement actions.

This chilling effect is not limited merely to the Plaintiffs nor to the named agency Defendants. As this Court held recently in its order on the motion to stay, this policy is likely

unconstitutional not merely as to Plaintiffs, but to all others similarly situated. Order Denying Mot. to Stay at 5 n.5, ECF No. 61 ("Stay Order"). That principle applies even more clearly to the injunction's applicability to other federal departments. Indeed, it is remarkable that the federal government is taking the position that a policy that fails the First Amendment as to the Department of Education does not fail the First Amendment as to the Department of Housing and Urban Development. That cannot be true. The Government has not pointed to any case where a court has accepted that proposition.

The Court's preliminary injunction, as written, covers every executive department that acts in concert or participation with Defendants to implement the likely unconstitutional Enjoined Provisions.

## ARGUMENT

### I. The PI Order prevents non-named agencies from engaging in otherwise enjoined viewpoint discrimination.

This Court has twice found that it is likely that agencies of the federal government have been acting unconstitutionally by punishing and threatening to punish private parties for their constitutionally protected speech, pursuant to vague, nationwide executive orders. *See* PI Order and Stay Order. That holding does not hinge on the actions of one specific agency or another, and the Government did not defend the case on the basis that different agencies would have different defenses. Plaintiffs understood, and believe the Court agreed, that weaponized viewpoint discrimination by the federal government is unconstitutional, period.

Mere weeks ago, the Trump administration admitted as much in a separate case concerning the enforcement of likely unconstitutional executive action by agencies throughout the government. The Department of Justice there communicated, in a notice attaching a temporary restraining order, that "all federal agencies (even those not named as defendants in the case) should

2

comply with the above-referenced terms." Ex. 1, Written Notice of Court Order, *New York et al. v. Trump*, No. 25-cv-39-JJM-PAS (D.R.I. Feb. 3, 2025), ECF No. 51-1, *available at* https://tinyurl.com/28sb2t8c.  Defendants have not pointed to any reason to deviate from their practice in that case, nor have they cited any authority to suggest that non-named agencies in exactly the same situation as named defendant agencies can continue to act contrary to an injunction. Indeed, Judge McConnell rejected Defendants' argument that the injunction he entered only applied to named defendant agencies in his case. *See* Order Enforcing TRO at 3 n.2, *New York et al. v. Trump,* No. 25-cv-39-JJM-PAS (D.R.I. Feb. 10, 2025), ECF No. 96, *available at* https://www.rid.uscourts.gov/sites/rid/files/OrderonEnforcement.pdf. There is no meaningful distinction between the scope of the injunction in that case and the injunction here. *Compare* TRO at 12, *New York et al. v. Trump*, No. 25-cv-39-JJM-PAS (D.R.I. Jan. 31, 2025), ECF No. 50, *available at* https://www.rid.uscourts.gov/sites/rid/files/TRO%20issued.pdf (issuing an injunction that Defendants "shall not pause, freeze, impede, block, cancel, or terminate" certain awards or obligations) *with* PI Order (same).

Far from anything extraordinary, Plaintiffs seek only clarification from the Court well within the principles underlying preliminary injunctions: that the Defendants cannot continue their constitutional violations, including of the First Amendment, by laundering enforcement through other agencies. *Cf. K.C. ex. Rel. Afr. H. v. Shipman* 716 F.3d 107, 115-16 (4th Cir. 2013) ("As the Supreme Court has explained, the purpose of [Rule 65(d)] is to prevent defendants from 'nullify[ing] a decree by carrying out prohibited acts through aiders and abettors'") (quoting *Regal Knitwear Co. v. Nat'l Lab. Rels. Bd.*, 324 U.S. 9, 14 (1945)). The robust case law expressly contemplating the enjoining of non-parties on precisely this ground is sufficient to bar Defendants' appeals to inchoate "traditional equitable principles." And permitting the continued constitutional

violations would fall short of a "remedy . . . necessary to provide relief" to the injured parties. *Lewis v. Casey*, 518 U.S. 343, 360 (1996)

Even taking Defendants' contentions at face value, though, there is no reason to artificially limit the scope of the PI Order on "equitable" grounds. In *Taylor v. Sturgell*, upon which Defendants rely, the Supreme Court recognized a variety of circumstances present here under which a court can bind a non-party while satisfying the requirements of "equity", including (1) where there is a "substantive legal relationship" between Defendants and the non-parties; and (2) where the non-parties were "adequately represented by someone with the same interests", *i.e.*, Defendants. 553 U.S. 880, 894 (2008). Those factors are satisfied here.

## II. Rule 65(d) provides relief as to all agencies who act in privity with Defendants.

An agency can be subject to a Rule 65(d) injunction even if it was not acting to "aid" any enjoined party, *contra* Defs' Br. in Opp'n to Mot. to Clarify ("Opp'n Br.") at 6; it is bound if it is "identified with [enjoined parties] in interest, in 'privity' with them, represented by them or subject to their control." *Golden State Bottling Co. v. Nat'l Lab. Rels. Bd.*, 414 U.S. 168, 179 (1973). Under this standard, non-named agencies are bound by the Preliminary Injunction Order.

*First*, non-named federal agencies are presumed to be represented by the Department of Justice ("DOJ"), Mem. ISO Mot. to Clarify ("Mem.") at 9 (citing 28 U.S.C. § 516), ECF No. 50-1,[1] and are otherwise in privity with Defendants here. Whether or not an agency was named as a defendant in this action, its legal position on the meaning of the challenged Executive Orders and federal constitutional law was adequately defended by DOJ in this matter. The Government has not and cannot identify any areas in which unnamed agencies would be differently placed than

---

[1] Defendants have not alleged any irreconcilable internal conflicts of interest that would suggest otherwise.

4

named agencies for purposes of determining the lawfulness of enforcing the Enjoined Provisions. Non-named agencies have had their "day in court" just as much as named agency defendants. *Alemite Mfg. Corp. v. Staff*, 42 F.2d 832, 832-33 (2d Cir. 1930). That is sufficient.

"For purposes of res judicata"—an analogous context where privity is the decisive legal question—"the United States is in privity with its authorized officials." *Schrader v. United States*, 75 Fed. Cl. 242, 249 (Ct. Fed. Cl. 2007); *see also* Wright & Miller, Government and Official Litigation, 18A Fed. Prac. & Proc. Juris. § 4458 (3d ed.) ("The general rule is that litigation by one agency is binding on other agencies of the same government, but exceptions may be warranted if there are important differences in the authority of the respective agencies.").[2] "Privity exists between representatives of the United States if, in the earlier litigation, the representative has authority 'to represent [the United States'] interests in a final adjudication of the issue in controversy.'" *United States v. Alky Enterprises, Inc.*, 969 F.2d 1309, 1314 (1st Cir. 1992) (*quoting Sunshine Anthracite Coal Co.*, 310 U.S. at 403); *see also Fund for Animals, Inc. v. Lujan*, 962 F.2d 1391, 1398 (9th Cir. 1992) ("Although the two actions name different federal defendants, there is privity between officers of the same government so that a judgment in a suit between a party and a representative of the United States is *res judicata* in relitigation of the same issue between that party and another officer of the government.") (cleaned up); *First Mortgage Corp. v. United States*,

---

[2] The paucity of cases where a federal agency claims it is not bound by a federal court's order finding another part of the executive branch to be violating the Constitution is perhaps not surprising, given the unprecedented nature of the Government's position in this case. *See infra* § 1. Notably, were the Court to find that only named agencies were within the scope of the injunction, Plaintiffs would need to amend their complaint to add additional defendants and seek an additional preliminary injunction as to those agencies, and *res judicata* would apply against the federal government with regard to legal standards in that motion. *See also Nat'l Spiritual Assembly of Baha'is of U.S. Under Hereditary Guardianship, Inc. v. Nat'l Spiritual Assembly of Baha'is of U.S., Inc.*, 628 F.3d 837, 849 (7th Cir. 2010) (equating the standards for claim preclusion and Rule 65(d)).

961 F.3d 1331, 1339 (Fed. Cir. 2020) (finding privity for *res judicata* principles for "officers of the same government"); *Mervin v. F.T.C.*, 591 F.2d 821, 830 (D.C. Cir. 1978) (same).

Courts have upheld this same principle in other litigation contexts. For instance, several courts have held that, when the Department of Justice acts on behalf of the United States in a litigation, non-party federal agencies can be subject to party discovery based on privity. *See, e.g.*, *United States v. Am. Tel. & Tel. Co.*, 461 F. Supp. 1314, 1334 (D.D.C. 1978) (explaining that non-party agencies were subject to discovery because "relief requested [was] national in scope" and "likely to involve the documents and the activities of a great number of government departments."). As the court in *AT&T* observed, "[a]n ambassador negotiating with a foreign government, the Secretary of the Treasury who authorizes the floating of a bond issue, a military contingent taking action on foreign soil[,] they all do so not on behalf of their respective departments but on behalf of this nation as represented by its government." *Id.* at 1333. To rule that each agency can go its own way would undermine the ability of litigants to receive consistent positions from different parts of the federal government that may be "dictated by their own parochial interests." *Id.* at 1331; *see also United States v. UBS Sec. LLC*, No. 118CV6369RPKPK, 2020 WL 7062789, at *6 (E.D.N.Y. Nov. 30, 2020) ("the definition of 'United States' also includes agencies that inform the policies, rules, and regulations that the executive branch sets"). Similarly, the Seventh Circuit has held that where an executive agency was "required by statute to report on its litigation activities directly to the Justice Department," the United States was "acting in the present case through both its attorneys in the [DOJ] and one of its agencies, and this [is sufficient] to satisfy the 'same party' requirement of [Federal Rule of Evidence] Rule 804(b)(1) [(governing former testimony by a party)]." *United States v. Sklena*, 692 F.3d 725, 732 (7th Cir. 2012); *see also Langbord v. U.S. Dep't of Treasury*, No. CIV.A. 06-5315, 2011 WL 2623315, at *14 (E.D.

Pa. July 5, 2011 ("Because the United States represents the interest of the people in this action, the Court considers any agency of the Executive Branch an agent of the United States under Rule 801(d)(2)(D)."); *cf. Texas v. Holder*, No. 12CV128DSTRMCRLW, 2012 WL 13070110, at *2 (D.D.C. June 8, 2012) (distinguishing cases where relief sought is "national in scope," versus specific to an agency).

The Department of Justice represented the federal government in this matter and put up a full, fair, and complete defense of the enforcement of the Executive Orders, without any suggestion that non-named agencies had a different legal position. It cannot now claim to have defended only a part of the government on a matter that applies uniformly throughout.

*Second*, the Department of Justice controls the legal positions of named and non-named agencies alike. For one, pursuant to Executive Order 14,215, 90 Fed. Reg. 10447, *Ensuring Accountability for All Agencies* (Feb. 18, 2025), all determinations about what federal law requires—which includes federal court orders and executive orders—rest with the Attorney General. In addition, the Attorney General, in a February 5 Memo—which appears to be operative—directs DOJ officials to assist the Office of Management and Budget with "reviewing, revising, and excising references to DEI and DEIA principles in government-wide processes, directives, and guidance as well as federal acquisition, contracting, grants, and financial assistance procedures." Ex. 10 at 4, ECF No. 27-14. Even more, the Attorney General called for the termination of equity-related grants or contracts by March 15, 2025. *Id.* at 3. The Attorney General purported to control government-wide agencies and interpretations of law and cannot walk back from those pronouncements now, when faced with this Court's PI Order. At a practical level, if non-named agencies, like AmeriCorps and the Department of Housing and Urban Development, approach DOJ, an enjoined party, about whether they should follow the PI Order, there can only

be one response: non-named agencies in privity with DOJ and under its control cannot implement the likely unconstitutional Enjoined Provisions.

The Government appears to recognize that privity is sufficient to find a non-named agency is in "active concert or participation" with a named defendant, *see* Opp'n Br. §1.b, but nevertheless suggests that the injunction applies only if a non-named agency is proven to be in a principal-agent relationship with a named defendant through the operation of aiding-and-abetting liability, *see* Opp'n Br. at 6 ("Plaintiffs' interpretation of the phrase 'active concert or participation' has no basis in Rule 65(d)'s well-established aiding-and-abetting standard."). That is not true. While "active concert or participation" has been read in parallel to civil liability for aiding and abetting, that does not imply that the aider or abettor is seeking, solely, to assist the named defendant's tort. Courts have rather focused on the harm alleged and the role the non-named party has played in perpetrating that harm in consort with the named party. Thus, for example, the Fourth Circuit in *Shipman* found that a non-defendant state entity was bound by an injunction as a "co-participant" because it was "acting in participation with the [defendant state agency] to that same end" of administering Medicaid services on behalf of the state, in addition to acting as an agent for the named defendant agency. 716 F.3d at 116. The Supreme Court has in fact recently held that aiding and abetting liability is determined by "focus[ing] . . . on assistance to the tort for which plaintiffs seek to impose liability." *Twitter, Inc. v. Taamneh*, 598 U.S. 471, 506 (2023). Here, that involves unconstitutionally chilling pro-DEI speech. "When there is a direct nexus between the defendant's acts and the tort," or, in this case between unnamed agencies and the chilling effect on speech, "courts may more easily infer such culpable assistance" sufficient to establish liability. *Id.*

Indeed, the Government's authorities cut in Plaintiffs' favor. *Thomas v. Brock*, cited Opp'n Br. at 3, concerned an injunction that applied to "any local or regional operation that is operated

8

through persons or organizations in ways in substance similar to the operation of [the named defendant], as described in the findings of fact and conclusions of law entered separately this day." 810 F.2d 448, 449 (4th Cir. 1987). The Fourt Circuit did not opine that the injunction violated Rule 65(d)'s limits on who an injunction can bind, despite being worded both more broadly and vaguely than the injunction in this case; it struck down that clause in *Thomas* because it violated a separate provision of Rule 65(d) that prohibits "reference to the complaint or other document." Defendants' other authority is neither binding nor on all fours with the instant case, as it concerns the appropriate standard for liability for contempt—not the permissible scope of a preliminary injunction under Rule 65. *E.g.*, *Future Motion, Inc. v. Lai*, No. 3:23-cv-1742-AR, 2025 WL 265818, at *1 (D. Or. Jan. 7, 2025) (applying the "D.C. Circuit's three-step framework to determine *civil* aiding-and-abetting liability" in considering motion for civil contempt sanctions); *Havens v. James*, 76 F.4th 103, 116 (2d Cir. 2023) (similar).

The Government also seeks to move the goalposts by suggesting Plaintiffs must show that a named defendant, like DOJ, ordered the Department of Housing and Urban Development to cancel specific awards in order to be encompassed by Rule 65(d). That is not true. Plaintiffs are challenging any agency's authority to terminate grants, require certification, or initiate enforcement action as a direct result of the Enjoined Provisions that DOJ and OMB are entrusted to oversee and enforce. Agencies that cancel grants on the basis of the challenged Executive Orders and the Enjoined Provisions are not acting "pursuant to their own independent enforcement authority," Opp'n Br. at 5—they are acting at the direction of the Executive Orders or a named Defendant. To suggest that these agencies are taking near-identical actions without some common reason for their action, Opp'n Br. at 10, is absurd. "Rule 65 requires [the Court], like Toto, to pull back the curtain to expose the reality" of common action, and not merely accept the "Wizard-of-

9

Oz defense" to "pay no attention to that man behind the curtain." *Washington Metro. Area Transit Comm'n v. Reliable Limousine Serv., LLC*, 776 F.3d 1, 9 (D.C. Cir. 2015).

**III.    There is no Article III or prudential barrier to the Court granting this relief.**

Plaintiffs are not asking for the kind of freewheeling 'enjoin the world' relief the Government claims is at issue. Plaintiffs are instead seeking to prevent the precise harm that the Executive Orders themselves mandated: requiring agencies across the federal government to engage in viewpoint discrimination under the supervision of the Department of Justice and the Office of Management and Budget. Plaintiffs named DOJ and OMB as defendants for their role in "implement[ing]" the Executive Orders, Compl. ¶¶ 39, 43, ECF No. 1, and Plaintiffs are seeking to prevent that implementation. A "district court has 'wide discretion' in fashioning the scope of a preliminary injunction, and that discretion includes, in appropriate cases, the entry of 'an injunction extending relief to those who are similarly situated to the litigants.'" *CASA, Inc. v. Maribel*, 2025 WL 654902, at *1 (4th Cir. Feb. 28, 2025) (quoting *Roe v. Dep't of Defense*, 947 F.3d 207, 231 (4th Cir. 2020)). While of course courts must ensure preliminary injunctions are "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," and while the Court should "mold its decree to meet the exigencies of the particular case," the district court is nevertheless afforded "wide discretion to fashion appropriate injunctive relief in a particular case." *Roe*, 947 F.3d at 231. That is precisely what the Court did in this case and no prudential principles counsel otherwise.

The Government's reliance on Article III standing to avoid the reach of the Court's order is no more availing. This Court has already held that Plaintiffs have "easily established their standing." *See, e.g.*, Mem. Op. at 3, 16-23, ECF No. 44. *Murthy v. Missouri*, 603 U.S. 43 (2024), the primary basis for the Government's challenge to standing, Opp'n Br. at 10-11, does not counsel differently. *Murthy* addressed claims by states and social media users that the federal government

10

had put pressure on private social-media platforms to censor speech regarding COVID-19. The Court faced "untangl[ing] the mass of the plaintiffs' injuries and Government communications" because "[t]he plaintiffs faced speech restrictions on different platforms, about different topics, at different times. Different groups of defendants communicated with different platforms, about different topics, at different times." *Murthy*, 603 U.S. at 61. In this context, the Supreme Court found plaintiffs lacked standing because there was no clear connection shown between the Government's actions, social media company policies, and private party speech.

Plaintiffs' situation is diametrically different: here, two Executive Orders directed agencies to take actions under the Enjoined Provisions that likely unconstitutionally chill speech. Agencies—both named and unnamed—enforced those Enjoined Provisions, citing to the Executive Orders, in concert with the OMB, OPM, and DOJ, as directed by the Executive Orders. *See, e.g.*, Compl. ¶¶ 76, 102-17 (explaining agencies' efforts to implement the J20 and J21 Orders); Mem. ISO TRO/Prelim. Inj. ("TRO/PI Br.") at 16, 20-21, ECF No. 27 (same). Plaintiffs' harm has resulted from and will continue to result from the enforcement of those Executive Orders. *See, e.g.*, Compl. ¶¶ 146-50 (describing agency actions pursuant to the J20 and J21 Orders that have already harmed plaintiffs); TRO/PI Br. at 7-8, 12-13, 23-24 (same); Reply ISO Prelim. Inj. at 1, 4, 9-11 (same); TRO/PI Br. at 4-6 (describing implementation of the orders beginning on January 22). Chief among those harms is the chilling of constitutionally protected speech. The Government would be able to accomplish that chilling effect by allowing any of its agencies to continue enforcing the Enjoined Provisions. An injunction blocking such enforcement would remedy Plaintiffs' harm. Mem. Op. at 25 ("In all cases, these objectively reasonable fears arise from the vague language in the Orders, and can be redressed by a favorable decision."); *cf. Haaland v. Brackeen*, 599 U.S. 255, 294 (2023) (no standing where plaintiffs did not seek relief against the

11

entities that were actually harming them). Standing thus remains sufficient at this early stage in the litigation. *See 3M Co. v. Christian Invs. LLC*, No. 1:11CV627, 2011 WL 3678144, at *4 n.8 (E.D. Va. Aug. 19, 2011) (jurisdiction need not be proved by preponderance of evidence at the preliminary injunction stage). The Government cannot escape this Court's orders through the simple expedience of enforcing the Enjoined Provisions through non-named agencies.

## CONCLUSION

This Court, having found that the Government is likely engaged in unconstitutional conduct, has the authority to enjoin the same unconstitutional conduct of non-named agencies who are in active concert or participation with Defendants. For the foregoing reasons, Plaintiffs respectfully request that this Court grant its motion to clarify the preliminary injunction order.

Respectfully submitted,

| | |
|---|---|
| Niyati Shah* | /s/ *Ananda V. Burra* |
| Noah Baron* | Ananda V. Burra (Bar No. 31438) |
| Alizeh Ahmad* | Aleshadye Getachew (Bar No. 31439) |
| **Asian Americans Advancing Justice \| AAJC** | Victoria S. Nugent (Bar No. 15039) |
| 1620 L Street NW, Suite 1050 | Audrey Wiggins* |
| Washington, DC 20036 | Brooke Menschel* |
| (202) 296-2300 | J. Sterling Moore* |
| nshah@advancingjustice-aajc.org | Orlando Economos* |
| nbaron@advancingjustice-aajc.org | Skye Perryman* |
| aahmad@advancingjustice-aajc.org | **Democracy Forward Foundation** |
| | P.O. Box 34553 |
| | Washington, D.C. 20043 |
| | (202) 448-9090 |
| | agetachew@democracyforward.org |
| | vnugent@democracyforward.org |
| | aburra@democracyforward.org |
| | awiggins@democracyforward.org |
| | bmenschel@democracyforward.org |
| | smoore@democracyforward.org |
| | oeconomos@democracyforward.org |
| | sperryman@democracyforward.org |

\* admitted *pro hac vice*

## **CERTIFICATE OF SERVICE**

      I hereby certify that this document filed through the ECF system and all attachments will be sent electronically on March 4, 2025 to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                                 /s/ *Ananda V. Burra*
                                                 Ananda V. Burra
                                                 Counsel for Plaintiffs