1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

```
NATIONAL ASSOCIATION OF   )
DIVERSITY OFFICERS IN     )
HIGHER EDUCATION, ET AL.,)
     Plaintiffs,          ) CASE NUMBER: 1:25-cv-0333-ABA
                          )
          v.              )
                          )
DONALD J. TRUMP, ET AL., )
     Defendants.          )
_____)
```

TRANSCRIPT OF PROCEEDINGS - MOTIONS HEARING
BEFORE THE HONORABLE ADAM B. ABELSON
UNITED STATES DISTRICT JUDGE
Thursday, April 10, 2025
Courtroom 7D

A P P E A R A N C E S

FOR THE PLAINTIFFS:
    BY: BROOKE MENSCHEL, ESQUIRE
       ANANDA V. BURRA, ESQUIRE
       AUDREY WIGGINS, ESQUIRE
       J. STERLING MOORE, ESQUIRE
       Democracy Forward Foundation
       PO Box 34553
       Washington, DC  20043

    BY: NIYATI SHAH, ESQUIRE
       ALIZEH AHMAD, ESQUIRE
       Asian Americans Advancing Justice-AAJC
       1620 L Street, NW
       Washington, DC  20036

FOR THE DEFENDANTS:
    BY: PARDIS GHEIBI, ESQUIRE
       DEPARTMENT OF JUSTICE
       Civil Division - Federal Programs Branch
       1100 L Street NW, Room 11526
       Washington, DC  20005

***Proceedings Recorded by Mechanical Stenography***
Transcript Produced by Computer-Aided Transcription

```
 1                    P R O C E E D I N G S
 2        (3:02 p.m.)
 3                THE COURTROOM DEPUTY:   The matter now pending before
 4        this Court is Civil Docket Number ABA-25-0333.   National
 5        Association of Diversity Officers in Higher Education, et al.,
 6        v. Trump, et al.   This matter now comes before this Court for
 7        the purpose of a motions hearing.
 8            Counsel for the plaintiffs, followed by counsel for the
 9        defendants, will you please introduce yourselves for the
10        record.
11                MS. MENSCHEL:   Good afternoon, Your Honor.   Brooke
12        Menschel for the plaintiffs.
13                MR. BURRA:   Good afternoon, Your Honor.   Ananda
14        Burra.
15                MS. SHAH:   Good afternoon, Your Honor.   Niyati Shah
16        for plaintiffs.
17                MS. AHMAD:   Good afternoon, Your Honor.   Alizeh
18        Ahmad for plaintiffs.
19                MS. WIGGINS:   Good afternoon, Your Honor.   Audrey
20        Wiggins for plaintiffs.
21                MR. MOORE:   Good afternoon.   Sterling Moore for
22        plaintiffs.
23                MS. GHEIBI:   Good afternoon, Your Honor.   Pardis
24        Gheibi for the defendants.
25                THE COURT:   All right, great.   Good afternoon.
```

3

```
 1        Thank you for being here.
 2             We are, as you all know, here on the plaintiffs' motion
 3        to vacate Preliminary Injunction Order, that's ECF 77.  There
 4        are a couple of various issues presented by this motion.  It
 5        is the plaintiffs' motion, so I'm happy to hear from the
 6        plaintiffs first.
 7                  MS. MENSCHEL:  Your Honor, would you like me at the
 8        podium?
 9                  THE COURT:  Wherever you feel most comfortable.
10                  MS. MENSCHEL:  Good afternoon, Your Honor.  We're
11        here today because seven weeks ago, in the seven weeks since
12        the Court issued its Preliminary Injunction, the plaintiffs
13        and their members and millions of people around the country
14        who are similarly situated have been suffering significant
15        ongoing and irreparable harm because of the executive orders
16        at issue here and because of the agency defendants'
17        understanding of them.
18             We've been candid with the Court.  We've been upfront
19        with the plaintiffs and we're here because we're trying to
20        obtain the fastest, broadest relief possible for our clients
21        through the Rule 59(e) mechanisms that are specifically
22        contemplated in the Federal Rules of Civil Procedure, in the
23        Federal Rules of Appellate Procedure, recognized by the
24        Supreme Court, and recognized by the Fourth Circuit.
25             We're aiming to provide precisely what the Fourth Circuit
```

1   has requested.  We're aiming to show precisely how the

2   administration and the agencies understand and interpret the

3   Executive Orders, and we're trying to do so in a matter that

4   conserves judicial resources and conserves resources of the

5   parties, and that the Fourth Circuit has suggested is not only

6   allowed, but also appropriate.

7        The Rule 59(e) is the appropriate mechanism for the

8   plaintiffs to use here.  That's clear from the face of the

9   rules.  It's clear from the face of Federal Rule of Appellate

10  Procedure 4, and it's clear in both the Fourth Circuit and

11  Supreme Court precedent.

12       The defendants have not provided any authority to the

13  contrary.  And, frankly, their arguments are a little bit

14  more-- are little more than a distraction.  We are prepared to

15  move quickly.  If the Court grants our Rule 59(e) motion, we

16  are prepared to file an amended complaint and a preliminary

17  injunction in short order with an eye towards relieving the

18  ongoing harm that our clients are suffering.

19       I'm happy to address any specific questions that you

20  have.

21            **THE COURT:**  All right, so let's start with the

22  jurisdiction issue.  So Federal Rules of Appellate Procedure

23  4, 4(a)(4)(A) is the rule about the effect of the motion, of

24  certain types of the motions on the jurisdiction -- well,

25  maybe the jurisdiction, but at least of the Court of Appeals.

1     But at least the effect of the Notice of Appeal.  And a Rule

2     59 motion to alter or amend is one of the specified rules or

3     specified motions under that rule.

4          All of the -- am I correct that all of the cases

5     addressing the application of that rule that either side has

6     cited are motions to alter or amend a final judgment, not a

7     Preliminary Injunction?

8               **MS. MENSCHEL:**  Your Honor, I do not believe that

9     that is -- I'm trying to run it back through.  I don't believe

10    that they are all motions to amend a final judgment.  I think

11    that there are -- there is a case and I will tell you exactly

12    what it is in a moment, which was a partial summary judgment

13    motion that did not ultimately dispose of the case.  It was a

14    partial summary judgment motion.

15              **THE COURT:**  It was a qualified immunity case, right?

16              **MS. MENSCHEL:**  Yes.

17              **THE COURT:**  Okay.  That's true.  So that's an

18    interlocutory appeal.

19              **MS. MENSCHEL:**  Yes.

20              **THE COURT:**  None of them are Preliminary

21    Injunctions, though.  I'm not saying that's dispositive on the

22    analysis; I just want to make sure that I'm reading the cases

23    consistent with the parties.

24              **MS. MENSCHEL:**  Yes, I believe that's true, Your

25    Honor.  But I would also say that in *Gelin v. County of*

1    *Baltimore*, the Fourth Circuit expressly said in footnote 3

2    there that it would be appropriate in -- for a Rule 59(e)

3    motion for anything from which an appeal could be taken, an

4    interlocutory could be taken under Rule 54.

5         **THE COURT:**  Right.  Any appeal from which an appeal

6    can be taken constitutes a judgment for purposes of that rule.

7         All right.  So my understanding of FRAP, I'll call it

8    FRAP 4, and specifically as amended in 1979 and then in 1993,

9    was that there were scenarios where a party filed a Notice of

10   Appeal.  Then a motion is filed in the District Court, Rule 59

11   or otherwise.  For a certain period of time, the filing of

12   that motion essentially extinguished the Notice of Appeal.

13   And the rules required at that time the filing of a new Notice

14   of Appeal and that various parties, particularly pro se

15   parties, were caught unaware and then they didn't have a

16   Notice of Appeal and appeals were untimely.

17        And so my understanding of the rule as amended is that

18   when a judgment, meaning an appealable order is appealed and

19   then one of the specified motions is filed, that the appeal

20   is, I think in the words of the Advisory Committee notes,

21   suspended in a way.  But in any event, the District Court has

22   jurisdiction to rule on the motion.

23        Is that all correct?

24        **MS. MENSCHEL:**  Yes, Your Honor.  That is consistent

25   with our understanding.

1         **THE COURT:**  All right.  So under your understanding

2    in part because Rule 59 is specified in FRAP 4, that means

3    that jurisdiction remains in this court to at least rule on

4    your Rule 59 motion.

5         **MS. MENSCHEL:**  Yes, Your Honor.  And also that the

6    Court of Appeals cannot, in fact, take up or rule on the

7    Notice of Appeal and the matter on appeal until this Court

8    rules on the Rule 59 motion.

9         **THE COURT:**  So you are advocating on behalf of your

10   clients and seeking and saying that you intend to file an

11   amended complaint and a new motion for a Preliminary

12   Injunction to seek, as you I think put it, broad relief.

13      The Fourth Circuit considered the Government's appeal and

14   specifically its motion to stay and granted that motion to

15   stay.  How am I to square your request for relief with the

16   Fourth Circuit's stay of your earlier motion and your

17   statement that what you continue to seek is broad injunctive

18   relief?

19         **MS. MENSCHEL:**  Yes, Your Honor.  I think the Fourth

20   Circuit's opinion, and specifically the concurrences by Judge

21   Diaz and Judge Harris point to exactly the issue which was

22   that at that time there was not sufficient information about

23   how the Government and how defendants would be understanding

24   the Executive Orders, how they would be implementing the

25   Executive Orders, and how they would be taking steps to

1    perhaps rely on the savings clause, perhaps not.  And the

2    Fourth Circuit in both of those concurrences specifically

3    said, at this point we do not think that the information is in

4    the record.  We disagreed and we believe that should we fully

5    brief, the Fourth Circuit would agree with us.

6         However, in this posture we are now trying to present to

7    you in hopes that you agree with our understanding that what

8    has developed over the last seven weeks shows precisely what

9    the Fourth Circuit was looking for and shows precisely that

10   the agency defendants have, in fact, implemented these

11   Executive Orders and understood and interpreted them to cause

12   significant more chilling, significant more violations of the

13   First Amendment and the Fifth Amendment and otherwise.  And

14   that with that more robust information before the Fourth

15   Circuit, they would not stay Your Honor's hopeful -- I'm being

16   optimistic here -- hopeful preliminary injunction, and

17   instead, provide the appropriate relief, the relief that we

18   think is appropriate.

19             THE COURT:  Okay, so play this out for me.

20             MS. MENSCHEL:  Sure.

21             THE COURT:  Let's say I were to grant your motion.

22   What comes next?

23             MS. MENSCHEL:  So, Your Honor, if you were to grant

24   the Rule 59(e) motion, our understanding then is that the

25   Notice of Appeal would be a nullity and that there would be

```
 1       nothing to appeal.
 2            THE COURT:  So you would file a motion to dismiss
 3       the appeal?
 4            MS. MENSCHEL:  We do not believe that we are
 5       required to.  That is our understanding at this point, but
 6       that we would likely provide a notification.  And I don't want
 7       to speak out of turn without checking on exactly what format
 8       that would be to the Fourth Circuit, but there would be
 9       nothing to appeal were you to vacate the Preliminary
10       Injunction.  So there would be nothing up on appeal.
11            THE COURT:  And then you would be filing an amended
12       complaint or would this be a motion for leave?
13            MS. MENSCHEL:  Your Honor, I think that either would
14       be appropriate.  I think that we are still as a strategic
15       matter, making some adjustments and decisions about that.  And
16       frankly, Your Honor, I think it maybe would depend on the
17       timing or exactly what appeared in a forthcoming order.
18            THE COURT:  All right.  Recognizing that
19       circumstances can change and decisions can change, flesh out
20       for me what an amended complaint would look like.  Would this
21       now be an as-applied challenge?  Would it remain a facial
22       challenge?  And if it's a facial challenge, what would be
23       different than the record that was already before me before?
24            MS. MENSCHEL:  Sure, Your Honor.  It would be a
25       facial challenge, remain a facial challenge.  There would
```

1    perhaps be additional claims that would be a little bit

2    broader and a little bit more targeted towards agencies.

3        But beyond that, I think that the key question, the key

4    issue is that the agencies have now understood, and

5    implemented, and taken steps to, in fact, act on the

6    administration's Executive Orders.  And that that has played

7    out over the last number of weeks in a way that was not,

8    frankly, before you before because it could not have been.

9    Because the agencies had not done, had not followed the

10   president's instructions yet.  And putting that information

11   into the record is, as we understand it, specifically what the

12   Fourth Circuit asked for and indicated that they thought it

13   was a little bit too early to have evaluated whether or not

14   there was this broad chilling effect.

15       But we know at this point that that is happening.  We

16   know and in -- it was ECF No. 68, a motion for a status

17   conference -- or emergency status conference before Your Honor

18   we put forward even at that time, significantly more

19   information about how the agencies were implementing the

20   Executive Orders that you did not have before you and that

21   were not part of the preliminary injunction.  And that

22   information is only many fold broader now, a number of weeks

23   later.  I'm happy to provide for you a couple of examples, but

24   I think that --

25           **THE COURT:**  Yeah, what are some examples?  The ECF

```
 1    68 was your motion relating to compliance with the PI, right?
 2        MS. MENSCHEL:  Yes, Your Honor.
 3        So for one thing that I would mention which -- and so
 4    there are a number outlined in that particular thing.  One, as
 5    recently as last week there were news reports about a state
 6    department notifying contractors around the world who
 7    contracted all with agencies that they would be required that
 8    all contractors, anywhere around the world, would be required
 9    to certify that they do not engage in DEI.  And the
10    notification reportedly includes language that says, "and we
11    are sending this out in order to comply with the president's
12    Executive Orders."
13        That is just one sort of very specific example.  But that
14    is following the Executive Orders, imposing the certification
15    requirement now internationally and affecting contractors
16    elsewhere in a way that is the kinds of things that in many
17    cases we could only anticipate when we were before you
18    originally on the Preliminary Injunction.
19        THE COURT:  Well, there was -- I mean, there were
20    various examples in the record at that time of interpretation
21    and as I recall, implementation.  So why from the -- let me
22    put it this way: Why would you envision that the motions panel
23    in the Fourth Circuit would consider that any different than
24    the record that already existed?
25        MS. MENSCHEL:  Your Honor, I think -- I mean, for
```

1    one thing I think I would go back to the fact that we think if

2    we were able to fully -- if we were in a position where we had

3    to fully brief before the Fourth Circuit, we still do

4    ultimately think we would be successful.  But again, we're

5    trying to do this in a time sensitive fashion and we think

6    that this is a better and more efficient way because doing it

7    that way through the -- going through the Fourth Circuit would

8    end up, we think, expending unnecessary judicial resources and

9    also causing significant delay. So as a top line I would say

10   that.

11       I think more specifically I would say there is an amount

12   of information, there were -- that is just much, much greater

13   now.  It is across all agencies and we are seeing it happen

14   all the time.

15       And I guess the last part I would say is in terms of the

16   standard, the Fourth Circuit just last year in a case that I

17   apologize I'm going to mispronounce, but is *Daulatzai* which is

18   cited in I believe our opening brief, talked a lot about the

19   standard and how the standard for vacating should be looking

20   to what the standard for the thing you're trying to do is.

21       And here we're looking to and thinking about amending.

22   The standard in that particular instance as the Fourth Circuit

23   talked about it is -- was to say that the Court could

24   essentially vacate for almost any reason that the Court saw

25   fit.  And that if you were looking to what would be required

 1    after the fact, that you would look to -- well, you would only

 2    look to what would be required if there was a showing of

 3    prejudice.

 4        The Government here has not shown any prejudice and

 5    can't, frankly, because we are trying to do the thing.  We're

 6    trying to vacate the Preliminary Injunction.  We're not --

 7        **THE COURT:**  So would the injunction that you at

 8    present would envision seeking, how would the, if at all,

 9    Preliminary Injunction look different than the Preliminary

10    Injunction that you sought for and/or that I issued before?

11        **MS. MENSCHEL:**  Your Honor, it's a -- it's a -- one,

12    I think that we are still fine tuning a little bit, so I would

13    ask that you take that into account.  But I think that in part

14    the question is a bit broader.  I think we've seen more of the

15    ways that things are being implemented.  And so this precise

16    language maybe would be different.  And -- but I don't know if

17    necessarily the words of, for example, our proposed order

18    would necessarily be hugely different.  I think there would be

19    some small changes to it, but I think that what would be in

20    the record at that point would be quite a bit different.

21        And I think, in addition, because of the potential APA

22    new claims or other related things, it would be as to that as

23    well.

24        **THE COURT:**  And would the new evidence go to

25    irreparable harm or likelihood of success on the merits?

1          **MS. MENSCHEL:**  I think both.

2          **THE COURT:**  So from a judicial economy perspective,

3     let's say hypothetically we were in a situation where we were

4     briefing a new motion for a Preliminary Injunction and the

5     injunction that you were seeking is the same and

6     hypothetically the injunction that I would grant would be the

7     same.  Why wouldn't that just delay an appeal on the question

8     of whether you are entitled to Preliminary Injunctive relief

9     on a facial -- on facial claims challenging these Executive

10    Orders?

11         **MS. MENSCHEL:**  Your Honor, I mean, I would go back

12    to I think what the Fourth Circuit in those two concurrences,

13    what we understood the Court to be asking for which was more

14    information about how this is playing out on the ground.  And

15    whatever any future injunction that Your Honor might issue

16    might be, I think the question that they were looking to was

17    really about what evidence and what information we had put

18    before you and what the reality on the ground was at that

19    time.  And the truth is, the reality on the ground is just,

20    frankly, very different now than it was at the time that we

21    moved originally.

22         We read the Fourth Circuit's opinion to be asking for

23    that information specifically and, in fact, saying this is not

24    the right time now.

25         One of the concurrences specifically said at this point,

1    and emphasized at this point it is appropriate to stay the

2    injunction, but that is not to say that if more information

3    comes to light that will still be -- that will still be the

4    case.  And we are, frankly, just trying to provide that

5    information to you and to the Fourth Circuit for your

6    consideration.

7              THE COURT:  Okay.  Thank you.

8         Ms. Gheibi.

9              MS. GHEIBI:  Thank you, Your Honor.

10        So as we highlighted in our briefing, we think this Court

11   plainly lacks jurisdiction to vacate the Preliminary

12   Injunction motion.  The most relevant ruling on that issue or

13   rather the most relevant opinion is the *In re Murphy-Brown*

14   opinion from the Fourth Circuit where the Fourth Circuit goes

15   on to say -- I'm quoting here from page 793.  It says, "We

16   have held the District Court lose its jurisdiction to amend or

17   vacate its order after a Notice of Appeal has been filed."  It

18   then --

19             THE COURT:  Wasn't that the gag order?  I mean, that

20   was not one of the rule FRAP 4 motions though, right?

21             MS. GHEIBI:  But Your Honor, the premise of the

22   ruling is still communicating the same thing.

23        The next sentence the Court says, "Or more generally, a

24   District Court loses jurisdiction when the Court of Appeals

25   assumes jurisdiction."  And as the Supreme Court explains in

1    the *Griggs* case, the whole premise of these rules and the way

2    they're structured is to avoid a situation which the District

3    Court and the Court of Appeals are exercising jurisdiction

4    over the same cases.  Simultaneous jurisdiction is what

5    they're trying to avoid.  The rules and their applications are

6    trying to facilitate this passing of the baton.

7            THE COURT:  So I was, frankly, a little confused by

8    that language in *In re Murphy-Brown* because it was citing a

9    1978 case which was before the 1979 amendments, and certainly

10   before the 1993 amendments.  So it's the current rule that

11   applies.

12       And am I wrong that at that time in 1978 that was the

13   correct statement, that there was no more jurisdiction,

14   including to adjudicate a motion to alter or amend, but now

15   there is?

16           MS. GHEIBI:  Is Your Honor referring to Rule 4, the

17   amendment?

18           THE COURT:  Yes.

19           MS. GHEIBI:  Well, Rule 4 is just the tolling

20   provision.  It doesn't mean -- we don't understand Rule 4 to

21   be conferring jurisdiction on the District Court; it's simply

22   to provide for tolling.

23           THE COURT:  But how could FRAP 4 say what it says if

24   a District Court where a Notice of Appeal has been filed, how

25   could it include a Rule 59 motion in that list?

1          **MS. GHEIBI:**  Because it's contemplating a situation

2    in which the Rule 59(e) motion is filed before a Notice of

3    Appeal is filed.  In that case, when a District Court has a

4    pending post-judgment motion before it, it's actively

5    exercising jurisdiction over that issue.  So it doesn't make

6    sense to pass the baton yet.  But in a situation where the

7    District Court doesn't have any pending motion before it and

8    the Notice of Appeal is filed, the baton has already passed.

9          **THE COURT:**  I just point you to the commentary to

10   the 1993 amendment to that rule which expressly states that it

11   is envisioning a scenario where a Notice of Appeal is filed

12   and then a post-trial motion is filed.  It said, among other

13   things, "The amendment provides that a Notice of Appeal filed

14   before the disposition of a specified pretrial motion will

15   become effective upon the disposition of the motion.  A notice

16   filed before the filing of specified motions or after, is in

17   effect suspended until the motion is disposed of."

18      So am I missing something?

19          **MS. GHEIBI:**  Is that the language that says it self

20   destructs?

21          **THE COURT:**  This is the 1993 amendments.  And right,

22   it is now clear that the Notice of Appeal did not self

23   destruct in the sense that an appellant must then file a new

24   Notice of Appeal.  Instead, as I understand the Rules

25   Committee's commentary to be, it doesn't self destruct; it

1    does mean that the District Court can, and should, and, in

2    fact, I think must decide the Rule 59 motion and then we'll

3    handle the appeal once that motion is decided.

4         MS. GHEIBI:  But I think, Your Honor, I point the

5    Court to the Fourth Circuit's precedence here that really talk

6    about this exact situation where plaintiffs are essentially or

7    the parties are essentially asking both courts to rule on the

8    same issue.  And I think if I may just quote from *In re*

9    *Murphy-Brown* --

10        THE COURT:  The gag order.  The gag order case.

11        MS. GHEIBI:  I'm sorry? Yes, the gag order case.

12   But in any event, the language is relevant where it said,

13   essentially allowing the District Court's post-appeal ruling

14   to stand would invite District Courts to track cases on the

15   Appellate Court's docket and when a reversal seems possible or

16   imminent, to pull the rug out from under the Appellate Court

17   and the parties.  This sets up an endless game of cat and

18   mouse.

19       And that's exactly what plaintiffs are requesting this

20   Court to do.  It seems clear that plaintiffs have --

21   plaintiffs now argue that they believe they'll win the appeal

22   and if that's the case then they should be briefing the

23   appeal.  But given that the Fourth Circuit has strongly

24   indicated that it's going to reverse, plaintiffs are back here

25   at the District Court level asking the District Court to pull

 1    the rug from underneath the Court of Appeals so that they can

 2    get a second bite at the apple.  And we don't think that would

 3    be appropriate consistent with the rules and precedent.

 4        And if I may note, as plaintiffs were discussing the kind

 5    of motion they're contemplating, they're still looking for a

 6    facial motion here.  And as we explained in our brief --

 7            THE COURT:  So just to make sure I'm tracking, that

 8    goes to whether -- not whether I have jurisdiction, but

 9    whether I should grant the motion.

10            MS. GHEIBI:  That's right, that's right.

11        So just moving on to the type of motion we're talking

12    about here, plaintiffs are essentially -- they couldn't

13    identify how different the injunction would be because it

14    seems fairly clear that plaintiffs are looking for exactly the

15    same injunction.  They're still moving for facial challenges.

16    That's what they plan to do.  And what the Court of Appeals

17    said, the concurrence by Judge Harris, she explains that what

18    the orders say on their face and how they are enforced are two

19    different things.  That may be true, but those are two

20    different challenges.

21        The Court then goes on to say on their face they're

22    distinctly limited.  The determination provision -- again, the

23    same arguments that we made.

24        And then the last sentence of that paragraph that we cite

25    on page 6 is "This case, however, does not directly challenge

 1    any such action."  And that was the case again.  Plaintiffs --

 2         **THE COURT:**  I'm sorry, what are you quoting there?

 3         **MS. GHEIBI:**  Judge Harris' concurrence where at the

 4    end of her concurrence she said, "This case, however, does not

 5    challenge any such action."  Plaintiffs have identified

 6    examples of implementation, but their challenge was

 7    fundamentally misdirected.  That's what the Fourth Circuit

 8    concurrences sort of illustrate.  There's nothing wrong with

 9    the Executive Orders on their face.  They're distinctly

10    limited.  This is what they say.

11         **THE COURT:**  Well, I'm not sure she went so far as to

12    say there's nothing wrong with them.

13         **MS. GHEIBI:**  Or it seems likely that there is.  I

14    mean, all three judges agree that the Government is likely to

15    succeed on the merits of the First Amendment and Fifth

16    Amendment claim.

17         But in any event, the Court there was distinguishing

18    between a facial challenge, the Executive Orders on their face

19    and an as-applied challenge to any particular agency action or

20    implementation.  Plaintiffs are thinking about bringing a

21    facial challenge here.  We'd be back here all over again.  It

22    would just make the process far more inefficient because it

23    would kick the can down the road on those questions.

24         And to the extent plaintiffs and us seem to disagree

25    about what the Court of Appeals was saying there, then the

1    solution is to allow the Court of Appeals to issue an opinion

2    and provide guidance to the parties and the Court about

3    exactly -- about the ruling on the merits.  It's not to sort

4    of, again, pull the rug from underneath the Court of Appeals

5    and get a second bite at the apple here.

6         And so -- oh, and one thing I'll note is to the extent

7    plaintiffs are thinking about bringing as-applied challenges,

8    we don't think any of those would be properly part of this

9    case in any event.  That's a completely different case.  It

10   would be a challenge to any particular agency action.  The

11   cause of action would be different.  The posture of the

12   challenge would be different.  Obviously the remedy would be

13   very different.  It would be targeted at something very

14   different.

15        **THE COURT:**  You're saying if they were to bring an

16   as-applied challenge in an amended complaint or otherwise that

17   would be just a different claim.  That's what you're saying?

18        **MS. GHEIBI:**  Yes.  We would not think that that

19   would be appropriately part of this case.  They're

20   fundamentally different, different claims and it is just a

21   fundamentally different request.  It's a fundamentally

22   different type of claim as opposed to a facial challenge to

23   Executive Orders.

24        And we'll note that this past Friday, the Supreme Court

25   in the stay order in *California v. Department of Education*

1    which pertained to the termination of certain grants

2    pertaining to DEI, the Court there said that the District

3    Court did not have jurisdiction to grant the remedy under the

4    Tucker Act, that that needs to go to the Court of Federal

5    Claims.

6        So there are also serious questions about whether or not

7    an as-applied challenge here would even have jurisdiction in

8    the District Court.  Again, plaintiffs would have to bring

9    those claims out for us to make those determinations.

10       But in any event, those are not the claims they brought.

11   That's not this case.  It's a completely different case and

12   plaintiffs shouldn't be given an opportunity to try again with

13   different facts.  So that is -- unless there are any further

14   questions.

15           **THE COURT:**  Not for now, thank you.

16           **MS. GHEIBI:**  Thank you.

17           **MS. MENSCHEL:**  Your Honor, may I just briefly

18   address a few things?  During counsel's discussion, she

19   strikingly focused almost entirely on whether or not

20   preliminary -- a new Preliminary Injunction should be granted.

21   That was the bulk of her argument.  And that is just not

22   what's before the Court today.  I mean, we have been pretty up

23   front about the fact that we intend for it to be in short

24   order.  But the question before Your Honor today is a much,

25   much narrower one.  And it's one that as we said and as Your

1    Honor acknowledged, the Advisory Committee notes say it is

2    appropriate procedure here.  The Federal Rules of Civil

3    Procedure, the Federal Rules of Appellate Procedure, and the

4    Fourth Circuit, the Supreme Court, and many, many other courts

5    as well.

6        Counsel is discussing gamesmanship and they put it in

7    their brief and they're accusing us today of doing so.  That

8    is, frankly, I think a little bit of a strange point and a

9    strange discussion when we are saying exactly what it is we're

10   trying to do.

11       The Supreme Court has addressed this very question both

12   in *Griggs*, where the Supreme Court said oh, it doesn't matter

13   whether or not the Notice of Appeal is filed before the motion

14   that's listed in Rule 59(e).  But also in *Banister v. Davis*,

15   the 590 U.S. 504.  And that was a 2020 case where the Supreme

16   Court specifically rejected claims that the use of Rule 59(e)

17   to vacate an order was an improper workaround.  And the Court

18   instead there said that the option to vacate within this very

19   strict timeline, again, 28 days, was actually a feature of the

20   system and not a bug.

21       And I would say there the Court also noted why we haven't

22   seen many cases in sort of a similar posture.  I believe it is

23   footnote 2 in that case talks about how one of the -- it is

24   often the 28 days prevents new evidence from being developed,

25   prevents new arguments from coming to light.

 1          But again, here not by plaintiffs' doing, but by

 2     defendants' doing, that is all -- that has all developed

 3     within the time period contemplated by the rules.

 4          Your Honor had --

 5          THE COURT:  The evidence that you think would

 6     bolster likelihood of success on the merits of a facial First

 7     Amendment and Fifth Amendment claim.

 8          MS. MENSCHEL:  Yes, Your Honor.  And I would also

 9     say Judge -- Chief Judge Diaz in his concurrence in footnote 1

10     of his concurrence at 4, he cited a facial challenge.  He

11     said, "I likewise reserve judgment on the extent to which the

12     Government relies on the Order's savings clause provisions as

13     it enforces the Order's directives against federal

14     contractors, grantees and private entities."  And he cites

15     *City and County of San Francisco v. Trump*.  And that was a

16     facial challenge there.

17          And it is the same thing here where the relevant

18     information that we understand Chief Judge Diaz and Judge

19     Harris to be seeking was about the extent to which the

20     Government is relying on the savings clause provisions and how

21     exactly the Government is going ahead and implementing these

22     Executive Orders.

23          THE COURT:  So when both Judge Diaz and Judge Harris

24     use the word "enforce," so Judge Diaz talks about relying, the

25     Government reliance on the savings clause provision as it

 1   enforces the Orders; and Judge Harris talks about what the

 2   Orders say on their face and how they are enforced are two

 3   different things.  Agency enforcement actions that go beyond

 4   the Order's narrow scope may well raise serious First

 5   Amendment and due process concerns.

 6        So why aren't those references to as-applied challenges

 7   as opposed to facial challenges?

 8             **MS. MENSCHEL:**  I think, Your Honor, the real issue

 9   is that the agencies as we understand it have adopted

10   agency-wide -- excuse me, Government-wide policies deciding to

11   implement the executive orders through these very broad-based

12   policies of terminating all grants, of terminating contracts,

13   of essentially following to a T the language laid out in the

14   Executive Orders and the context within it which we have

15   discussed with Your Honor extensively, and the reasons that

16   that violates the First and Fifth Amendment.

17        And when the agencies have now adopted these very broad

18   policies, that is, in fact, a part of as we understand it, the

19   Executive Orders themselves.  And I think that the -- I'm

20   going to stop there for a moment.

21             **THE COURT:**  Okay.

22             **MS. MENSCHEL:**  May I also, Your Honor, point you to

23   there's a case, I believe it is cited in our opening brief on

24   this motion which is at ECF 77.  *Vantage Mobility v. Kersey,*

25   *836 F. App'x 496.*  It's a Ninth Circuit case where there was a

1    Rule 59(e) motion within the time, the requisite time period.

2    And that was on a Preliminary Injunction.

3        I would also say the discussion with counsel about

4    whether we can amend and how we can amend, as I said earlier,

5    that's a little bit not part of this particular motion before

6    you at this very moment, but also how we are sort of making

7    our strategic decisions to serve our clients as best as we can

8    is a little bit -- it's a question for the Court and a

9    question for us about what we want to advocate.  It would be

10   inappropriate at this point for defendants to say well, they

11   can't do this.

12            THE COURT:  Well, to the extent I was asking

13   questions about plans, I'm trying to figure out whether and to

14   what extent the issues as presented that would be presented at

15   such future time and such future briefing on a future motion

16   for a Preliminary Injunction would be materially different

17   than where we are now if as I hear the anticipated claims

18   would remain facial claims.

19            MS. MENSCHEL:  Yes, Your Honor.  That's accurate.

20            THE COURT:  Okay.

21            MS. MENSCHEL:  And the one last case that I wanted

22   to also point Your Honor to is the Fourth Circuit in 1999 in

23   *Fobian v. Storage Tech, 164 F.3d 887* talks about how this is

24   appropriate to vacate under Rule 59.  It's not gamesmanship to

25   do so.  And we are, in fact, trying to just avail ourselves of

```
 1    the procedures set forth in the rules.
 2              THE COURT:  Okay.  Thank you.
 3        Ms. Gheibi, was there anything else you wanted to add?
 4              MS. GHEIBI:  Nothing from me.  Thank you.
 5              THE COURT:  All right, I'll take this motion under
 6    advisement and get you a decision as soon as I can.  Thank
 7    you, everybody.
 8              (Proceeding concluded at 3:42 p.m.)
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1                    CERTIFICATE OF OFFICIAL REPORTER

 2

 3

 4

 5              I, Nadine M. Bachmann, Certified Realtime Reporter

 6     and Registered Merit Reporter, in and for the United States

 7     District Court for the District of Maryland, do hereby

 8     certify, pursuant to 28 U.S.C. § 753, that the foregoing is a

 9     true and correct transcript of the stenographically-reported

10     proceedings held in the above-entitled matter and that the

11     transcript page format is in conformance with the regulations

12     of the Judicial Conference of the United States.

13

14                         Dated this 10th day of April, 2025.

15

16                         -S-

17                         _____

18                         NADINE M. BACHMANN, CRR, RMR
                           FEDERAL OFFICIAL COURT REPORTER
19

20

21

22

23

24

25
```

**1**

**1** [1] - 24:9
**10** [1] - 1:10
**10th** [1] - 28:14
**1100** [1] - 1:22
**11526** [1] - 1:22
**1620** [1] - 1:18
**164** [1] - 26:23
**1978** [2] - 16:9, 16:12
**1979** [2] - 6:8, 16:9
**1993** [4] - 6:8, 16:10, 17:10, 17:21
**1999** [1] - 26:22
**1:25-cv-0333-ABA** [1] - 1:4

**2**

**2** [1] - 23:23
**20005** [1] - 1:22
**20036** [1] - 1:19
**20043** [1] - 1:16
**2020** [1] - 23:15
**2025** [2] - 1:10, 28:14
**28** [3] - 23:19, 23:24, 28:8

**3**

**3** [1] - 6:1
**34553** [1] - 1:15
**3:02** [1] - 2:2
**3:42** [1] - 27:8

**4**

**4** [10] - 4:10, 4:23, 6:8, 7:2, 15:20, 16:16, 16:19, 16:20, 16:23, 24:10
**4(a)(4)(A** [1] - 4:23
**496** [1] - 25:25

**5**

**504** [1] - 23:15
**54** [1] - 6:4
**59** [8] - 5:2, 6:10, 7:2, 7:4, 7:8, 16:25, 18:2, 26:24
**59(e** [8] - 3:21, 4:7, 4:15, 6:2, 8:24, 17:2, 23:16, 26:1
**59(e)** [1] - 23:14
**590** [1] - 23:15

**6**

**6** [1] - 19:25

**68** [2] - 10:16, 11:1

**7**

**753** [1] - 28:8
**77** [2] - 3:3, 25:24
**793** [1] - 15:15
**7D** [1] - 1:10

**8**

**836** [1] - 25:25
**887** [1] - 26:23

**A**

**AAJC** [1] - 1:18
**ABA-25-0333** [1] - 2:4
**ABELSON** [1] - 1:9
**able** [1] - 12:2
**above-entitled** [1] - 28:10
**account** [1] - 13:13
**accurate** [1] - 26:19
**accusing** [1] - 23:7
**acknowledged** [1] - 23:1
**Act** [1] - 22:4
**act** [1] - 10:5
**action** [5] - 20:1, 20:5, 20:19, 21:10, 21:11
**actions** [1] - 25:3
**actively** [1] - 17:4
**ADAM** [1] - 1:9
**add** [1] - 27:3
**addition** [1] - 13:21
**additional** [1] - 10:1
**address** [2] - 4:19, 22:18
**addressed** [1] - 23:11
**addressing** [1] - 5:5
**adjudicate** [1] - 16:14
**adjustments** [1] - 9:15
**administration** [1] - 4:2
**administration's** [1] - 10:6
**adopted** [2] - 25:9, 25:17
**Advancing** [1] - 1:18
**advisement** [1] - 27:6
**Advisory** [2] - 6:20, 23:1
**advocate** [1] - 26:9
**advocating** [1] - 7:9
**affecting** [1] - 11:15
**afternoon** [9] - 2:11, 2:13, 2:15, 2:17, 2:19, 2:21, 2:23, 2:25, 3:10

**agencies** [9] - 4:2, 10:2, 10:4, 10:9, 10:19, 11:7, 12:13, 25:9, 25:17
**agency** [6] - 3:16, 8:10, 20:19, 21:10, 25:3, 25:10
**agency-wide** [1] - 25:10
**ago** [1] - 3:11
**agree** [3] - 8:5, 8:7, 20:14
**ahead** [1] - 24:21
**AHMAD** [1] - 1:17, 2:17
**Ahmad** [1] - 2:18
**Aided** [1] - 1:24
**aiming** [2] - 3:25, 4:1
**AL** [2] - 1:4, 1:6
**al** [2] - 2:5, 2:6
**Alizeh** [1] - 2:17
**ALIZEH** [1] - 1:17
**allow** [1] - 21:1
**allowed** [1] - 4:6
**allowing** [1] - 18:13
**almost** [2] - 12:24, 22:19
**alter** [3] - 5:2, 5:6, 16:14
**amend** [7] - 5:2, 5:6, 5:10, 15:16, 16:14, 26:4
**amended** [7] - 4:16, 6:8, 6:17, 7:11, 9:11, 9:20, 21:16
**amending** [1] - 12:21
**amendment** [3] - 16:17, 17:10, 17:13
**Amendment** [8] - 8:13, 20:15, 20:16, 24:7, 25:5, 25:16
**amendments** [3] - 16:9, 16:10, 17:21
**Americans** [1] - 1:18
**amount** [1] - 12:11
**analysis** [1] - 5:22
**ANANDA** [1] - 1:13
**Ananda** [1] - 2:13
**anticipate** [1] - 11:17
**anticipated** [1] - 26:17
**APA** [1] - 13:21
**apologize** [1] - 12:17
**App'x** [1] - 25:25
**Appeal** [16] - 5:1, 6:10, 6:12, 6:14, 6:16, 7:7, 8:25, 15:17, 16:24, 17:3, 17:8, 17:11, 17:13, 17:22, 17:24, 23:13
**appeal** [16] - 5:18, 6:3,

6:5, 6:19, 7:7, 7:13, 9:1, 9:3, 9:9, 9:10, 14:7, 18:3, 18:13, 18:21, 18:23
**appealable** [1] - 6:18
**appealed** [1] - 6:18
**Appeals** [9] - 4:25, 7:6, 15:24, 16:3, 19:1, 19:16, 20:25, 21:1, 21:4
**appeals** [1] - 6:16
**appeared** [1] - 9:17
**appellant** [1] - 17:23
**Appellate** [6] - 3:23, 4:9, 4:22, 18:15, 18:16, 23:3
**apple** [1] - 19:2, 21:5
**application** [1] - 5:5
**applications** [1] - 16:5
**applied** [6] - 9:21, 20:19, 21:7, 21:16, 22:7, 25:6
**applies** [1] - 16:11
**appropriate** [10] - 4:6, 4:7, 6:2, 8:17, 8:18, 9:14, 15:1, 19:3, 23:2, 26:24
**appropriately** [1] - 21:19
**April** [2] - 1:10, 28:14
**argue** [1] - 18:21
**argument** [1] - 22:21
**arguments** [4] - 4:13, 19:23, 23:25
**as-applied** [6] - 9:21, 20:19, 21:7, 21:16, 22:7, 25:6
**Asian** [1] - 1:18
**ASSOCIATION** [1] - 1:3
**Association** [1] - 2:5
**assumes** [1] - 15:25
**Audrey** [1] - 2:19
**AUDREY** [1] - 1:14
**authority** [1] - 4:12
**avail** [1] - 26:25
**avoid** [2] - 16:2, 16:5

**B**

**Bachmann** [1] - 28:5
**BACHMANN** [1] - 28:18
**Baltimore** [1] - 6:1
**Banister** [1] - 23:14
**based** [1] - 25:11
**baton** [3] - 16:6, 17:6, 17:8
**become** [1] - 17:15
**BEFORE** [1] - 1:9

**behalf** [1] - 7:9
**best** [1] - 26:7
**better** [1] - 12:6
**between** [1] - 20:18
**beyond** [2] - 10:3, 25:3
**bit** [10] - 4:13, 10:1, 10:2, 10:13, 13:12, 13:14, 13:20, 23:8, 26:5, 26:8
**bite** [2] - 19:2, 21:5
**bolster** [1] - 24:6
**Box** [1] - 1:15
**Branch** [1] - 1:21
**brief** [6] - 8:5, 12:3, 12:18, 19:6, 23:7, 25:23
**briefing** [1] - 14:4, 15:10, 18:22, 26:15
**briefly** [1] - 22:17
**bring** [2] - 21:15, 22:8
**bringing** [2] - 20:20, 21:7
**broad** [5] - 7:12, 7:17, 10:14, 25:11, 25:17
**broad-based** [1] - 25:11
**broader** [3] - 10:2, 10:22, 13:14
**broadest** [1] - 3:20
**BROOKE** [1] - 1:13
**brooke** [1] - 2:11
**brought** [1] - 22:10
**Brown** [3] - 15:13, 16:8, 18:9
**bug** [1] - 23:20
**bulk** [1] - 22:21
**Burra** [1] - 2:14
**BURRA** [2] - 1:13, 2:13
**BY** [3] - 1:13, 1:17, 1:20

**C**

**California** [1] - 21:25
**candid** [1] - 3:18
**cannot** [1] - 7:6
**CASE** [1] - 1:4
**case** [24] - 5:11, 5:13, 5:15, 12:16, 15:4, 16:1, 16:9, 17:3, 18:10, 18:11, 18:22, 19:25, 20:1, 20:4, 21:9, 21:19, 22:11, 23:15, 23:23, 25:23, 25:25, 26:21
**cases** [6] - 5:4, 5:22, 11:17, 16:4, 18:14, 23:22

**cat** [1] - 18:17
**caught** [1] - 6:15
**causing** [1] - 12:9
**certain** [3] - 4:24, 6:11, 22:1
**certainly** [1] - 16:9
**CERTIFICATE** [1] - 28:1
**certification** [1] - 11:14
**Certified** [1] - 28:5
**certify** [2] - 11:9, 28:8
**challenge** [18] - 9:21, 9:22, 9:25, 19:25, 20:5, 20:6, 20:18, 20:19, 20:21, 21:10, 21:12, 21:16, 21:22, 22:7, 24:10, 24:16
**challenges** [5] - 19:15, 19:20, 21:7, 25:6, 25:7
**challenging** [1] - 14:9
**change** [2] - 9:19
**changes** [1] - 13:19
**checking** [1] - 9:7
**Chief** [2] - 24:9, 24:18
**chilling** [2] - 8:12, 10:14
**Circuit** [26] - 3:24, 3:25, 4:5, 4:10, 6:1, 7:13, 8:2, 8:5, 8:9, 8:15, 9:8, 10:12, 11:23, 12:3, 12:7, 12:16, 12:22, 14:12, 15:5, 15:14, 18:23, 20:7, 23:4, 25:25, 26:22
**Circuit's** [4] - 7:16, 7:20, 14:22, 18:5
**circumstances** [1] - 9:19
**cite** [1] - 19:24
**cited** [4] - 5:6, 12:18, 24:10, 25:23
**cites** [1] - 24:14
**citing** [1] - 16:8
**City** [1] - 24:15
**Civil** [4] - 1:21, 2:4, 3:22, 23:2
**claim** [4] - 20:16, 21:17, 21:22, 24:7
**claims** [9] - 10:1, 13:22, 14:9, 21:20, 22:9, 22:10, 23:16, 26:17, 26:18
**Claims** [1] - 22:5
**clause** [4] - 8:1, 24:12, 24:20, 24:25
**clear** [6] - 4:8, 4:9, 4:10, 17:22, 18:20,

19:14
**clients** [4] - 3:20, 4:18, 7:10, 26:7
**comfortable** [1] - 3:9
**coming** [1] - 23:25
**commentary** [2] - 17:9, 17:25
**Committee** [2] - 6:20, 23:1
**Committee's** [1] - 17:25
**communicating** [1] - 15:22
**complaint** [4] - 4:16, 7:11, 9:12, 9:20, 21:16
**completely** [2] - 21:9, 22:11
**compliance** [1] - 11:1
**comply** [1] - 11:11
**Computer** [1] - 1:24
**Computer-Aided** [1] - 1:24
**concerns** [1] - 25:5
**concluded** [1] - 27:8
**Concurrence** [5] - 19:17, 20:3, 20:4, 24:9, 24:10
**concurrences** [5] - 7:20, 8:2, 14:12, 14:25, 20:8
**Conference** [1] - 28:12
**conference** [2] - 10:17
**conferring** [1] - 16:21
**conformance** [1] - 28:11
**confused** [1] - 16:7
**conserves** [1] - 4:4
**consider** [1] - 11:23
**consideration** [1] - 15:6
**considered** [1] - 7:13
**consistent** [3] - 5:23, 6:24, 19:3
**constitutes** [1] - 6:6
**contemplated** [2] - 3:22, 24:3
**contemplating** [2] - 17:1, 19:5
**context** [1] - 25:14
**continue** [1] - 7:17
**contracted** [1] - 11:7
**contractors** [4] - 11:6, 11:8, 11:15, 24:14
**contracts** [1] - 25:12
**contrary** [1] - 4:13
**correct** [4] - 5:4, 6:23, 16:13, 28:9
**counsel** [4] - 2:8,

23:6, 26:3
**counsel's** [1] - 22:18
**country** [1] - 3:13
**County** [2] - 5:25, 24:15
**couple** [2] - 3:4, 10:23
**court** [1] - 7:3
**COURT** [41] - 1:1, 2:25, 3:9, 4:21, 5:15, 5:17, 5:20, 6:5, 7:1, 7:9, 8:19, 8:21, 9:2, 9:11, 9:18, 10:25, 11:19, 13:7, 13:24, 14:2, 15:7, 15:19, 16:7, 16:18, 16:23, 17:9, 17:21, 18:10, 19:7, 20:2, 20:11, 21:15, 22:15, 24:5, 24:23, 25:21, 26:12, 26:20, 27:2, 27:5, 28:18
**Court** [55] - 2:4, 2:6, 3:12, 3:18, 3:24, 4:11, 4:15, 4:25, 6:10, 6:21, 7:6, 7:7, 12:23, 12:24, 14:13, 15:10, 15:16, 15:23, 15:24, 15:25, 16:3, 16:21, 16:24, 17:3, 17:7, 18:1, 18:5, 18:16, 18:20, 18:25, 19:1, 19:16, 19:21, 20:17, 20:25, 21:1, 21:2, 21:4, 21:24, 22:2, 22:3, 22:4, 22:8, 22:22, 23:4, 23:11, 23:12, 23:16, 23:17, 23:21, 26:8, 28:7
**Court's** [2] - 18:13, 18:15
**COURTROOM** [1] - 2:3
**Courtroom** [1] - 1:10
**courts** [2] - 18:7, 23:4
**Courts** [1] - 18:14
**CRR** [1] - 28:18
**current** [1] - 16:10

# D

**Dated** [1] - 28:14
**Daulatzai** [1] - 12:17
**Davis** [1] - 23:14
**days** [2] - 23:19, 23:24
**DC** [3] - 1:16, 1:19, 1:22
**decide** [1] - 18:2
**decided** [1] - 18:3
**deciding** [1] - 25:10

**decision** [1] - 27:6
**decisions** [3] - 9:15, 9:19, 26:7
**Defendant** [1] - 1:7
**DEFENDANTS** [1] - 1:20
**defendants** [6] - 2:9, 2:24, 4:12, 7:23, 8:10, 26:10
**defendants'** [2] - 3:16, 24:2
**DEI** [2] - 11:9, 22:2
**delay** [2] - 12:9, 14:7
**Democracy** [1] - 1:15
**DEPARTMENT** [1] - 1:21
**department** [2] - 11:6, 21:25
**DEPUTY** [1] - 2:3
**destruct** [2] - 17:23, 17:25
**destructs** [1] - 17:20
**determination** [1] - 19:22
**determinations** [1] - 22:9
**developed** [3] - 8:8, 23:24, 24:2
**Diaz** [5] - 7:21, 24:9, 24:18, 24:23, 24:24
**different** [24] - 9:23, 11:23, 13:9, 13:16, 13:18, 13:20, 14:20, 19:13, 19:19, 19:20, 21:9, 21:11, 21:12, 21:13, 21:14, 21:17, 21:20, 21:21, 21:22, 22:11, 22:13, 25:3, 26:16
**directives** [1] - 24:13
**directly** [1] - 19:25
**disagree** [1] - 20:24
**disagreed** [1] - 8:4
**discussed** [1] - 25:15
**discussing** [2] - 19:4, 23:6
**discussion** [3] - 22:18, 23:9, 26:3
**dismiss** [1] - 9:2
**dispose** [1] - 5:13
**disposed** [1] - 17:17
**disposition** [2] - 17:14, 17:15
**dispositive** [1] - 5:21
**distinctly** [2] - 19:22, 20:9
**distinguishing** [1] - 20:17
**distraction** [1] - 4:14
**DISTRICT** [3] - 1:1,

1:1, 1:9
**District** [18] - 6:10, 6:21, 15:16, 15:24, 16:2, 16:21, 16:24, 17:3, 17:7, 18:1, 18:13, 18:14, 18:25, 22:2, 22:8, 28:7
**Diversity** [1] - 2:5
**DIVERSITY** [1] - 1:3
**Division** [1] - 1:21
**DIVISION** [1] - 1:2
**docket** [1] - 18:15
**Docket** [1] - 2:4
**DONALD** [1] - 1:6
**done** [1] - 10:9
**down** [1] - 20:23
**due** [1] - 25:5
**during** [1] - 22:18

# E

**early** [1] - 10:13
**ECF** [4] - 3:3, 10:16, 10:25, 25:24
**economy** [1] - 14:2
**Education** [2] - 2:5, 21:25
**EDUCATION** [1] - 1:4
**effect** [4] - 4:23, 5:1, 10:14, 17:17
**effective** [1] - 17:15
**efficient** [1] - 12:6
**either** [2] - 5:5, 9:13
**elsewhere** [1] - 11:16
**emergency** [1] - 10:17
**emphasized** [1] - 15:1
**end** [2] - 12:8, 20:4
**endless** [1] - 18:17
**enforce** [1] - 24:24
**enforced** [2] - 19:18, 25:2
**enforcement** [1] - 25:3
**enforces** [2] - 24:13, 25:1
**engage** [1] - 11:9
**entirely** [1] - 22:19
**entities** [1] - 24:14
**entitled** [2] - 14:8, 28:10
**envision** [2] - 11:22, 13:8
**envisioning** [1] - 17:11
**ESQUIRE** [7] - 1:13, 1:13, 1:14, 1:14, 1:17, 1:17, 1:20
**essentially** [7] - 6:12, 12:24, 18:6, 18:7, 18:13, 19:12, 25:13
**et** [2] - 2:5, 2:6

**ET** [2] - 1:4, 1:6
**evaluated** [1] - 10:13
**event** [5] - 6:21, 18:12, 20:17, 21:9, 22:10
**evidence** [4] - 13:24, 14:17, 23:24, 24:5
**exact** [1] - 18:6
**exactly** [9] - 5:11, 7:21, 9:7, 9:17, 18:19, 19:14, 21:3, 23:9, 24:21
**example** [2] - 11:13, 13:17
**examples** [4] - 10:23, 10:25, 11:20, 20:6
**excuse** [1] - 25:10
**executive** [2] - 3:15, 25:11
**Executive** [15] - 4:3, 7:24, 7:25, 8:11, 10:6, 10:20, 11:12, 11:14, 14:9, 20:9, 20:18, 21:23, 24:22, 25:14, 25:19
**exercising** [2] - 16:3, 17:5
**existed** [1] - 11:24
**expending** [1] - 12:8
**explained** [1] - 19:6
**explains** [2] - 15:25, 19:17
**expressly** [2] - 6:1, 17:10
**extensively** [1] - 25:15
**extent** [6] - 20:24, 21:6, 24:11, 24:19, 26:12, 26:14
**extinguished** [1] - 6:12
**eye** [1] - 4:17

## F

**F.3d** [1] - 26:23
**face** [7] - 4:8, 4:9, 19:18, 19:21, 20:9, 20:18, 25:2
**facial** [16] - 9:21, 9:22, 9:25, 14:9, 19:6, 19:15, 20:18, 20:21, 21:22, 24:6, 24:10, 24:16, 25:7, 26:18
**facilitate** [1] - 16:6
**fact** [10] - 7:6, 8:10, 10:5, 12:1, 13:1, 14:23, 18:2, 22:23, 25:18, 26:25
**facts** [1] - 22:13
**fairly** [1] - 19:14
**far** [2] - 20:11, 20:22

**fashion** [1] - 12:5
**fastest** [1] - 3:20
**feature** [1] - 23:19
**FEDERAL** [1] - 28:18
**Federal** [8] - 1:21, 3:22, 3:23, 4:9, 4:22, 22:4, 23:2, 23:3
**federal** [1] - 24:13
**few** [1] - 22:18
**Fifth** [4] - 8:13, 20:15, 24:7, 25:16
**figure** [1] - 26:13
**file** [4] - 4:16, 7:10, 9:2, 17:23
**filed** [13] - 6:9, 6:10, 6:19, 15:17, 16:24, 17:2, 17:3, 17:8, 17:11, 17:12, 17:13, 17:16, 23:13
**filing** [4] - 6:11, 6:13, 9:11, 17:16
**final** [2] - 5:6, 5:10
**fine** [1] - 13:12
**first** [1] - 3:6
**First** [5] - 8:13, 20:15, 24:6, 25:4, 25:16
**fit** [1] - 12:25
**flesh** [1] - 9:19
**Fobian** [1] - 26:23
**focused** [1] - 22:19
**fold** [1] - 10:22
**followed** [2] - 2:8, 10:9
**following** [2] - 11:14, 25:13
**footnote** [3] - 6:1, 23:23, 24:9
**FOR** [3] - 1:1, 1:12, 1:20
**foregoing** [1] - 28:8
**format** [2] - 9:7, 28:11
**forth** [1] - 27:1
**forthcoming** [1] - 9:17
**Forward** [1] - 1:15
**forward** [1] - 10:18
**Foundation** [1] - 1:15
**Fourth** [29] - 3:24, 3:25, 4:5, 4:10, 6:1, 7:13, 7:16, 7:19, 8:2, 8:5, 8:9, 8:14, 9:8, 10:12, 11:23, 12:3, 12:7, 12:16, 12:22, 14:12, 14:22, 15:5, 15:14, 18:5, 18:23, 20:7, 23:4, 26:22
**Francisco** [1] - 24:15
**frankly** [8] - 4:13, 9:16, 10:8, 13:5, 14:20, 15:4, 16:7, 23:8

**FRAP** [5] - 6:7, 6:8, 7:2, 15:20, 16:23
**Friday** [1] - 21:24
**front** [1] - 22:23
**fully** [3] - 8:4, 12:2, 12:3
**fundamentally** [4] - 20:7, 21:20, 21:21
**future** [4] - 14:15, 26:15

## G

**gag** [4] - 15:19, 18:10, 18:11
**game** [1] - 18:17
**gamesmanship** [2] - 23:6, 26:24
**Gelin** [1] - 5:25
**generally** [1] - 15:23
**Gheibi** [3] - 2:24, 15:8, 27:3
**GHEIBI** [16] - 1:20, 2:23, 15:9, 15:21, 16:16, 16:19, 17:1, 17:19, 18:4, 18:11, 19:10, 20:3, 20:13, 21:18, 22:16, 27:4
**given** [2] - 18:23, 22:12
**Government** [8] - 7:23, 13:4, 20:14, 24:12, 24:20, 24:21, 24:25, 25:10
**Government's** [1] - 7:13
**Government-wide** [1] - 25:10
**grant** [5] - 8:21, 8:23, 14:6, 19:9, 22:3
**granted** [2] - 7:14, 22:20
**grantees** [1] - 24:14
**grants** [3] - 4:15, 22:1, 25:12
**great** [1] - 2:25
**greater** [1] - 12:12
**Griggs** [2] - 16:1, 23:12
**ground** [3] - 14:14, 14:18, 14:19
**guess** [1] - 12:15
**guidance** [1] - 21:2

## H

**handle** [1] - 18:3
**happy** [3] - 3:5, 4:19, 10:23
**harm** [3] - 3:15, 4:18,

13:25
**Harris** [5] - 7:21, 19:17, 24:19, 24:23, 25:1
**Harris'** [1] - 20:3
**hear** [2] - 3:5, 26:17
**hearing** [1] - 2:7
**HEARING** [1] - 1:8
**held** [2] - 15:16, 28:10
**hereby** [1] - 28:7
**Higher** [1] - 2:5
**HIGHER** [1] - 1:4
**highlighted** [1] - 15:10
**Honor** [37] - 2:11, 2:13, 2:15, 2:17, 2:19, 2:23, 3:7, 3:10, 5:8, 5:25, 6:24, 7:5, 7:19, 8:23, 9:13, 9:16, 9:24, 10:17, 11:2, 11:25, 13:11, 14:11, 14:15, 15:9, 15:21, 16:16, 18:4, 22:17, 22:24, 23:1, 24:4, 24:8, 25:8, 25:15, 25:22, 26:19, 26:22
**Honor's** [1] - 8:15
**HONORABLE** [1] - 1:9
**hopeful** [2] - 8:15, 8:16
**hopes** [1] - 8:7
**hugely** [1] - 13:18
**hypothetically** [2] - 14:3, 14:6

## I

**identified** [1] - 20:5
**identify** [1] - 19:13
**illustrate** [1] - 20:8
**imminent** [1] - 18:16
**immunity** [1] - 5:15
**implement** [1] - 25:11
**implementation** [3] - 11:21, 20:6, 20:20
**implemented** [3] - 8:10, 10:5, 13:15
**implementing** [3] - 7:24, 10:19, 24:21
**imposing** [1] - 11:14
**improper** [1] - 23:17
**IN** [2] - 1:1, 1:3
**inappropriate** [1] - 26:10
**include** [1] - 16:25
**includes** [1] - 11:10
**including** [1] - 16:14
**indicated** [2] - 10:12, 18:24
**inefficient** [1] - 20:22

**information** [13] - 7:22, 8:3, 8:14, 10:10, 10:19, 10:22, 12:12, 14:14, 14:17, 14:23, 15:2, 15:5, 24:18
**injunction** [10] - 4:17, 8:16, 10:21, 13:7, 14:5, 14:6, 14:15, 15:2, 19:13, 19:15
**Injunction** [14] - 3:3, 3:12, 5:7, 7:12, 9:10, 11:18, 13:6, 13:9, 13:10, 14:4, 15:12, 22:20, 26:2, 26:16
**Injunctions** [1] - 5:21
**Injunctive** [1] - 14:8
**injunctive** [1] - 7:17
**instance** [1] - 12:22
**instead** [3] - 8:17, 17:24, 23:18
**instructions** [1] - 10:10
**intend** [2] - 7:10, 22:23
**interlocutory** [2] - 5:18, 6:4
**internationally** [1] - 11:15
**interpret** [1] - 4:2
**interpretation** [1] - 11:20
**interpreted** [1] - 8:11
**introduce** [1] - 2:9
**invite** [1] - 18:14
**irreparable** [2] - 3:15, 13:25
**issue** [10] - 3:16, 4:22, 7:21, 10:4, 14:15, 15:12, 17:5, 18:8, 21:1, 25:8
**issued** [2] - 3:12, 13:10
**issues** [2] - 3:4, 26:14

## J

**Judge** [7] - 7:20, 7:21, 19:17, 24:9, 24:18, 24:23, 24:24, 25:1
**judge** [1] - 20:3
**JUDGE** [1] - 1:9
**judges** [1] - 20:14
**judgment** [8] - 5:6, 5:10, 5:12, 5:14, 6:6, 6:18, 17:4, 24:11
**judicial** [3] - 4:4, 12:8, 14:2
**Judicial** [1] - 28:12

**jurisdiction** [17] - 4:22, 4:24, 4:25, 6:22, 7:3, 15:11, 15:16, 15:24, 15:25, 16:3, 16:4, 16:13, 16:21, 17:5, 19:8, 22:3, 22:7
**Justice** [1] - 1:18
**JUSTICE** [1] - 1:21
**Justice-AAJC** [1] - 1:18

**K**

**Kersey** [1] - 25:24
**key** [2] - 10:3
**kick** [1] - 20:23
**kind** [1] - 19:4
**kinds** [1] - 11:16

**L**

**lacks** [1] - 15:11
**laid** [1] - 25:13
**language** [6] - 11:10, 13:16, 16:8, 17:19, 18:12, 25:13
**last** [7] - 8:8, 10:7, 11:5, 12:15, 12:16, 19:24, 26:21
**least** [3] - 4:25, 5:1, 7:3
**leave** [1] - 9:12
**level** [1] - 18:25
**light** [2] - 15:3, 23:25
**likelihood** [2] - 13:25, 24:6
**likely** [3] - 9:6, 20:13, 20:14
**likewise** [1] - 24:11
**limited** [2] - 19:22, 20:10
**line** [1] - 12:9
**list** [1] - 16:25
**listed** [1] - 23:14
**look** [4] - 9:20, 13:1, 13:2, 13:9
**looking** [7] - 8:9, 12:19, 12:21, 12:25, 14:16, 19:5, 19:14
**lose** [1] - 15:16
**loses** [1] - 15:24

**M**

**Maryland** [1] - 28:7
**MARYLAND** [1] - 1:1
**materially** [1] - 26:16
**matter** [7] - 2:3, 2:6, 4:3, 7:7, 9:15, 23:12,
28:10
**mean** [8] - 11:19, 11:25, 14:11, 15:19, 16:20, 18:1, 20:14, 22:22
**meaning** [1] - 6:18
**means** [1] - 7:2
**Mechanical** [1] - 1:24
**mechanism** [1] - 4:7
**mechanisms** [1] - 3:21
**members** [1] - 3:13
**MENSCHEL** [27] - 1:13, 2:11, 3:7, 3:10, 5:8, 5:16, 5:19, 5:24, 6:24, 7:5, 7:19, 8:20, 8:23, 9:4, 9:13, 9:24, 11:2, 11:25, 13:11, 14:1, 14:11, 22:17, 24:8, 25:8, 25:22, 26:19, 26:21
**Menschel** [1] - 2:12
**mention** [1] - 11:3
**Merit** [1] - 28:6
**merits** [4] - 13:25, 20:15, 21:3, 24:6
**might** [2] - 14:15, 14:16
**millions** [1] - 3:13
**misdirected** [1] - 20:7
**mispronounce** [1] - 12:17
**missing** [1] - 17:18
**Mobility** [1] - 25:24
**moment** [3] - 5:12, 25:20, 26:6
**MOORE** [1] - 1:14, 2:21
**Moore** [1] - 2:21
**most** [3] - 3:9, 15:12, 15:13
**motion** [47] - 3:2, 3:4, 3:5, 4:15, 4:23, 5:2, 5:13, 5:14, 6:3, 6:10, 6:12, 6:22, 7:4, 7:8, 7:11, 7:14, 7:16, 8:21, 8:24, 9:2, 9:12, 10:16, 11:1, 14:4, 15:12, 16:14, 16:25, 17:2, 17:4, 17:7, 17:12, 17:14, 17:15, 17:17, 18:2, 18:3, 19:5, 19:6, 19:9, 19:11, 23:13, 25:24, 26:1, 26:5, 26:15, 27:5
**motions** [9] - 2:7, 4:24, 5:3, 5:6, 5:10, 6:19, 11:22, 15:20, 17:16
**MOTIONS** [1] - 1:8
**mouse** [1] - 18:18
**move** [1] - 4:15
**moved** [1] - 14:21
**moving** [2] - 19:11, 19:15
**MR** [2] - 2:13, 2:21
**MS** [44] - 2:11, 2:15, 2:17, 2:19, 2:23, 3:7, 3:10, 5:8, 5:16, 5:19, 5:24, 6:24, 7:5, 7:19, 8:20, 8:23, 9:4, 9:13, 9:24, 11:2, 11:25, 13:11, 14:1, 14:11, 15:9, 15:21, 16:16, 16:19, 17:1, 17:19, 18:4, 18:11, 19:10, 20:3, 20:13, 21:18, 22:16, 22:17, 24:8, 25:8, 25:22, 26:19, 26:21, 27:4
**Murphy** [3] - 15:13, 16:8, 18:9
**Murphy-Brown** [3] - 15:13, 16:8, 18:9
**must** [2] - 17:23, 18:2

**N**

**Nadine** [1] - 28:5
**NADINE** [1] - 28:18
**narrow** [1] - 25:4
**narrower** [1] - 22:25
**NATIONAL** [1] - 1:3
**National** [1] - 2:4
**necessarily** [2] - 13:17, 13:18
**needs** [1] - 22:4
**new** [9] - 6:13, 7:11, 13:22, 13:24, 14:4, 17:23, 22:20, 23:24, 23:25
**news** [1] - 11:5
**next** [2] - 8:22, 15:23
**Ninth** [1] - 25:25
**NIYATI** [1] - 1:17
**Niyati** [1] - 2:15
**none** [1] - 5:20
**NORTHERN** [1] - 1:2
**note** [3] - 19:4, 21:6, 21:24
**noted** [1] - 23:21
**notes** [2] - 6:20, 23:1
**nothing** [6] - 9:1, 9:9, 9:10, 20:8, 20:12, 27:4
**notice** [1] - 17:15
**Notice** [16] - 5:1, 6:9, 6:12, 6:13, 6:16, 7:7, 8:25, 15:17, 16:24,
17:2, 17:8, 17:11, 17:13, 17:22, 17:24, 23:13
**notification** [2] - 9:6, 11:10
**notifying** [1] - 11:6
**nullity** [1] - 8:25
**Number** [1] - 2:4
**number** [5] - 10:7, 10:22, 11:4
**NUMBER** [1] - 1:4
**NW** [2] - 1:18, 1:22

**O**

**obtain** [1] - 3:20
**obviously** [1] - 21:12
**OF** [5] - 1:1, 1:3, 1:8, 1:21, 28:1
**Officers** [1] - 2:5
**OFFICERS** [1] - 1:3
**OFFICIAL** [2] - 28:1, 28:18
**often** [1] - 23:24
**once** [1] - 18:3
**one** [14] - 5:2, 6:19, 11:3, 11:4, 11:13, 12:1, 13:11, 14:25, 15:20, 21:6, 22:25, 23:23, 26:21
**ongoing** [2] - 3:15, 4:18
**opening** [2] - 12:18, 25:23
**opinion** [5] - 7:20, 14:22, 15:13, 15:14, 21:1
**opportunity** [1] - 22:12
**opposed** [2] - 21:22, 25:7
**optimistic** [1] - 8:16
**option** [1] - 23:18
**Order** [1] - 3:3
**order** [13] - 4:17, 6:18, 9:17, 11:11, 13:17, 15:17, 15:19, 18:10, 18:11, 21:25, 22:24, 23:17
**Order's** [3] - 24:12, 24:13, 25:4
**Orders** [17] - 4:3, 7:24, 7:25, 8:11, 10:6, 10:20, 11:12, 11:14, 14:10, 20:9, 20:18, 21:23, 24:22, 25:1, 25:2, 25:14, 25:19
**orders** [3] - 3:15, 19:18, 25:11
**originally** [2] - 11:18,
14:21
**otherwise** [3] - 6:11, 8:13, 21:16
**ourselves** [1] - 26:25
**outlined** [1] - 11:4

**P**

**p.m** [2] - 2:2, 27:8
**page** [3] - 15:15, 19:25, 28:11
**panel** [1] - 11:22
**paragraph** [1] - 19:24
**PARDIS** [1] - 1:20
**Pardis** [1] - 2:23
**part** [8] - 7:2, 10:21, 12:15, 13:13, 21:8, 21:19, 25:18, 26:5
**partial** [2] - 5:12, 5:14
**particular** [5] - 11:4, 12:22, 20:19, 21:10, 26:5
**particularly** [1] - 6:14
**parties** [7] - 4:5, 5:23, 6:14, 6:15, 18:7, 18:17, 21:2
**party** [1] - 6:9
**pass** [1] - 17:6
**passed** [1] - 17:8
**passing** [1] - 16:6
**past** [1] - 21:24
**pending** [3] - 2:3, 17:4, 17:7
**people** [1] - 3:13
**perhaps** [3] - 8:1, 10:1
**period** [3] - 6:11, 24:3, 26:1
**perspective** [1] - 14:2
**pertained** [1] - 22:1
**pertaining** [1] - 22:2
**PI** [1] - 11:1
**plainly** [1] - 15:11
**Plaintiff** [1] - 1:4
**plaintiffs** [25] - 2:8, 2:12, 2:16, 2:18, 2:20, 2:22, 3:6, 3:12, 3:19, 4:8, 18:6, 18:19, 18:20, 18:21, 18:24, 19:4, 19:12, 19:14, 20:1, 20:5, 20:20, 20:24, 21:7, 22:8, 22:12
**PLAINTIFFS** [1] - 1:12
**plaintiffs'** [3] - 3:2, 3:5, 24:1
**plan** [1] - 19:16
**plans** [1] - 26:13
**play** [1] - 8:19
**played** [1] - 10:6
**playing** [1] - 14:14

5

**PO** [1] - 1:15
**podium** [1] - 3:8
**point** [13] - 7:21, 8:3, 9:5, 10:15, 13:20, 14:25, 15:1, 17:9, 18:4, 23:8, 25:22, 26:10, 26:22
**policies** [3] - 25:10, 25:12, 25:18
**position** [1] - 12:2
**possible** [2] - 3:20, 18:15
**post** [3] - 17:4, 17:12, 18:13
**post-appeal** [1] - 18:13
**post-judgment** [1] - 17:4
**post-trial** [1] - 17:12
**posture** [3] - 8:6, 21:11, 23:22
**potential** [1] - 13:21
**precedence** [1] - 18:5
**precedent** [2] - 4:11, 19:3
**precise** [1] - 13:15
**precisely** [4] - 3:25, 4:1, 8:8, 8:9
**prejudice** [2] - 13:3, 13:4
**Preliminary** [16] - 3:3, 3:12, 5:7, 5:20, 7:11, 9:9, 11:18, 13:6, 13:9, 14:4, 14:8, 15:11, 22:20, 26:2, 26:16
**preliminary** [4] - 4:16, 8:16, 10:21, 22:22
**premise** [2] - 15:21, 16:1
**prepared** [2] - 4:14, 4:16
**present** [2] - 8:6, 13:8
**presented** [3] - 3:4, 26:14
**president's** [2] - 10:10, 11:11
**pretrial** [1] - 17:14
**pretty** [1] - 22:22
**prevents** [2] - 23:24, 23:25
**private** [1] - 24:14
**pro** [1] - 6:14
**procedure** [1] - 23:2
**Procedure** [6] - 3:22, 3:23, 4:10, 4:22, 23:3
**procedures** [1] - 27:1
**Proceeding** [1] - 27:8
**Proceedings** [1] -

1:24
**proceedings** [1] - 28:10
**PROCEEDINGS** [1] - 1:8
**process** [2] - 20:22, 25:5
**Produced** [1] - 1:24
**Programs** [1] - 1:21
**properly** [1] - 21:8
**proposed** [1] - 13:17
**provide** [7] - 3:25, 8:17, 9:6, 10:23, 15:4, 16:22, 21:2
**provided** [1] - 4:12
**provides** [1] - 17:13
**provision** [3] - 16:20, 19:22, 24:25
**provisions** [2] - 24:12, 24:20
**pull** [3] - 18:16, 18:25, 21:4
**purpose** [1] - 2:7
**purposes** [1] - 6:6
**pursuant** [1] - 28:8
**put** [5] - 7:12, 10:18, 11:22, 14:17, 23:6
**putting** [1] - 10:10

### Q

**qualified** [1] - 5:15
**questions** [5] - 4:19, 20:23, 22:6, 22:14, 26:13
**quickly** [1] - 4:15
**quite** [1] - 13:20
**quote** [1] - 18:8
**quoting** [2] - 15:15, 20:2

### R

**raise** [1] - 25:4
**rather** [1] - 15:13
**re** [3] - 15:13, 16:8, 18:8
**read** [1] - 14:22
**reading** [1] - 5:22
**real** [1] - 25:8
**reality** [2] - 14:18, 14:19
**really** [2] - 14:17, 18:5
**Realtime** [1] - 28:5
**reason** [1] - 12:24
**reasons** [1] - 25:15
**recently** [1] - 11:5
**recognized** [2] - 3:23, 3:24
**recognizing** [1] - 9:18

**record** [7] - 2:10, 8:4, 9:23, 10:11, 11:20, 11:24, 13:20
**Recorded** [1] - 1:24
**references** [1] - 25:6
**referring** [1] - 16:16
**Registered** [1] - 28:6
**regulations** [1] - 28:11
**rejected** [1] - 23:16
**related** [1] - 13:22
**relating** [1] - 11:1
**relevant** [4] - 15:12, 15:13, 18:12, 24:17
**reliance** [1] - 24:25
**relief** [7] - 3:20, 7:12, 7:15, 7:18, 8:17, 14:8
**relies** [1] - 24:12
**relieving** [1] - 4:17
**rely** [1] - 8:1
**relying** [2] - 24:20, 24:24
**remain** [3] - 9:21, 9:25, 26:18
**remains** [1] - 7:3
**remedy** [2] - 21:12, 22:3
**reported** [1] - 28:9
**reportedly** [1] - 11:10
**REPORTER** [2] - 28:1, 28:18
**Reporter** [2] - 28:5, 28:6
**reports** [1] - 11:5
**request** [2] - 7:15, 21:21
**requested** [1] - 4:1
**requesting** [1] - 18:19
**required** [6] - 6:13, 9:5, 11:7, 11:8, 12:25, 13:2
**requirement** [1] - 11:15
**requisite** [1] - 26:1
**reserve** [1] - 24:11
**resources** [3] - 4:4, 12:8
**reversal** [1] - 18:15
**reverse** [1] - 18:24
**RMR** [1] - 28:18
**road** [1] - 20:23
**robust** [1] - 8:14
**Room** [1] - 1:22
**rug** [3] - 18:16, 19:1, 21:4
**rule** [12] - 4:23, 5:3, 5:5, 6:6, 6:17, 6:22, 7:3, 7:6, 15:20, 16:10, 17:10, 18:7

**Rule** [22] - 3:21, 4:7, 4:9, 4:15, 5:1, 6:2, 6:4, 6:10, 7:2, 7:4, 7:8, 8:24, 16:16, 16:19, 16:20, 16:25, 17:2, 18:2, 23:14, 23:16, 26:1, 26:24
**Rules** [6] - 3:22, 3:23, 4:22, 17:24, 23:2, 23:3
**rules** [9] - 4:9, 5:2, 6:13, 7:8, 16:1, 16:5, 19:3, 24:3, 27:1
**ruling** [4] - 15:12, 15:22, 18:13, 21:3
**run** [1] - 5:9

### S

**San** [1] - 24:15
**savings** [4] - 8:1, 24:12, 24:20, 24:25
**saw** [1] - 12:24
**scenario** [1] - 17:11
**scenarios** [1] - 6:9
**scope** [1] - 25:4
**se** [1] - 6:14
**second** [2] - 19:2, 21:5
**seeing** [1] - 12:13
**seek** [2] - 7:12, 7:17
**seeking** [4] - 7:10, 13:8, 14:5, 24:19
**seem** [1] - 20:24
**self** [3] - 17:19, 17:22, 17:25
**sending** [1] - 11:11
**sense** [2] - 17:6, 17:23
**sensitive** [1] - 12:5
**sentence** [2] - 15:23, 19:24
**serious** [2] - 22:6, 25:4
**serve** [1] - 26:7
**set** [1] - 27:1
**sets** [1] - 18:17
**seven** [2] - 3:11, 8:8
**SHAH** [2] - 1:17, 2:15
**Shah** [1] - 2:15
**short** [2] - 4:17, 22:23
**show** [1] - 4:1
**showing** [1] - 13:2
**shown** [1] - 13:4
**shows** [2] - 8:8, 8:9
**side** [1] - 5:5
**significant** [3] - 3:14, 8:12, 12:9
**significantly** [1] - 10:18
**similar** [1] - 23:22

**similarly** [1] - 3:14
**simply** [1] - 16:21
**simultaneous** [1] - 16:4
**situated** [1] - 3:14
**situation** [5] - 14:3, 16:2, 17:1, 17:6, 18:6
**small** [1] - 13:19
**solution** [1] - 21:1
**soon** [1] - 27:6
**sorry** [2] - 18:11, 20:2
**sort** [5] - 11:13, 20:8, 21:3, 23:22, 26:6
**sought** [1] - 13:10
**specific** [2] - 4:19, 11:13
**specifically** [10] - 3:21, 6:8, 7:14, 7:20, 8:2, 10:11, 12:11, 14:23, 14:25, 23:16
**specified** [6] - 5:2, 5:3, 6:19, 7:2, 17:14, 17:16
**square** [1] - 7:15
**stand** [1] - 18:14
**standard** [3] - 12:16, 12:19, 12:20, 12:22
**start** [1] - 4:21
**state** [1] - 11:5
**statement** [2] - 7:17, 16:13
**States** [2] - 28:6, 28:12
**STATES** [2] - 1:1, 1:9
**states** [1] - 17:10
**status** [2] - 10:16, 10:17
**stay** [6] - 7:14, 7:15, 7:16, 8:15, 15:1, 21:25
**stenographically** [1] - 28:9
**stenographically-reported** [1] - 28:9
**Stenography** [1] - 1:24
**steps** [2] - 7:25, 10:5
**sterling** [1] - 2:21
**STERLING** [1] - 1:14
**still** [8] - 9:14, 12:3, 13:12, 15:3, 15:22, 19:5, 19:15
**stop** [1] - 25:20
**storage** [1] - 26:23
**strange** [2] - 23:8, 23:9
**strategic** [2] - 9:14, 26:7
**Street** [2] - 1:18, 1:22

**strict** [1] - 23:19
**strikingly** [1] - 22:19
**strongly** [1] - 18:23
**structured** [1] - 16:2
**succeed** [1] - 20:15
**success** [2] - 13:25, 24:6
**successful** [1] - 12:4
**suffering** [2] - 3:14, 4:18
**sufficient** [1] - 7:22
**suggested** [1] - 4:5
**summary** [2] - 5:12, 5:14
**Supreme** [8] - 3:24, 4:11, 15:25, 21:24, 23:4, 23:11, 23:12, 23:15
**suspended** [2] - 6:21, 17:17
**system** [1] - 23:20

## T

**talks** [4] - 23:23, 24:24, 25:1, 26:23
**targeted** [2] - 10:2, 21:13
**Tech** [1] - 26:23
**terminating** [2] - 25:12
**termination** [1] - 22:1
**terms** [1] - 12:15
**THE** [45] - 1:1, 1:1, 1:9, 1:12, 1:20, 2:3, 2:25, 3:9, 4:21, 5:15, 5:17, 5:20, 6:5, 7:1, 7:9, 8:19, 8:21, 9:2, 9:11, 9:18, 10:25, 11:19, 13:7, 13:24, 14:2, 15:7, 15:19, 16:7, 16:18, 16:23, 17:9, 17:21, 18:10, 19:7, 20:2, 20:11, 21:15, 22:15, 24:5, 24:23, 25:21, 26:12, 26:20, 27:2, 27:5
**themselves** [1] - 25:19
**thinking** [3] - 12:21, 20:20, 21:7
**three** [1] - 20:14
**Thursday** [1] - 1:10
**timeline** [1] - 23:19
**timing** [1] - 9:17
**today** [4] - 3:11, 22:22, 22:24, 23:7
**tolling** [2] - 16:19, 16:22
**top** [1] - 12:9
**towards** [2] - 4:17,

10:2
**track** [1] - 18:14
**tracking** [1] - 19:7
**transcript** [2] - 28:9, 28:11
**Transcript** [1] - 1:24
**TRANSCRIPT** [1] - 1:8
**Transcription** [1] - 1:24
**trial** [1] - 17:12
**true** [4] - 5:17, 5:24, 19:19, 28:9
**TRUMP** [1] - 1:6
**Trump** [1] - 2:6
**trump** [1] - 24:15
**truth** [1] - 14:19
**try** [1] - 22:12
**trying** [14] - 3:19, 4:3, 5:9, 8:6, 12:5, 12:20, 13:5, 13:6, 15:4, 16:5, 16:6, 23:10, 26:13, 26:25
**Tucker** [1] - 22:4
**tuning** [1] - 13:12
**turn** [1] - 9:7
**two** [4] - 14:12, 19:18, 19:19, 25:2
**type** [2] - 19:11, 21:22
**types** [1] - 4:24

## U

**U.S** [1] - 23:15
**U.S.C** [1] - 28:8
**ultimately** [2] - 5:13, 12:4
**unaware** [1] - 6:15
**under** [7] - 5:3, 6:4, 7:1, 18:16, 22:3, 26:24, 27:5
**underneath** [2] - 19:1, 21:4
**understood** [3] - 8:11, 10:4, 14:13
**United** [2] - 28:6, 28:12
**UNITED** [2] - 1:1, 1:9
**unless** [1] - 22:13
**unnecessary** [1] - 12:8
**untimely** [1] - 6:16
**up** [5] - 7:6, 9:10, 12:8, 18:17, 22:22
**upfront** [1] - 3:18

## V

**vacate** [9] - 3:3, 9:9, 12:24, 13:6, 15:11, 15:17, 23:17, 23:18,

26:24
**vacating** [1] - 12:19
**vantage** [1] - 25:24
**various** [3] - 3:4, 6:14, 11:20
**violates** [1] - 25:16
**violations** [1] - 8:12

## W

**Washington** [3] - 1:16, 1:19, 1:22
**ways** [1] - 13:15
**week** [1] - 11:5
**weeks** [5] - 3:11, 8:8, 10:7, 10:22
**whole** [1] - 16:1
**wide** [2] - 25:10
**Wiggins** [1] - 2:20
**WIGGINS** [2] - 1:14, 2:19
**win** [1] - 18:21
**word** [1] - 24:24
**words** [2] - 6:20, 13:17
**workaround** [1] - 23:17
**world** [2] - 11:6, 11:8

## Y

**year** [1] - 12:16
**yourselves** [1] - 2:9

## §

**§** [1] - 28:8