# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NATIONAL ASSOCIATION OF
DIVERSITY OFFICERS IN HIGHER
EDUCATION, *et al.*,

     *Plaintiffs*,

  v.

DONALD J. TRUMP, *et al.*,

     *Defendants*

Case No. 25-cv-0333-ABA

## MEMORANDUM OPINION AND ORDER

This Court entered a preliminary injunction on February 21, 2025, enjoining the enforcement of specific provisions of three executive orders. ECF Nos. 44-45 & 66-67. Defendants filed a notice of appeal on February 24, 2025. ECF No. 47. On March 14, the Fourth Circuit stayed the injunction. ECF No. 73. On March 21, Plaintiffs filed a motion pursuant to Federal Rule of Civil Procedure 59(e) to vacate this Court's preliminary injunction in light of what Plaintiffs described as new factual developments. ECF No. 77. Plaintiffs state that those factual developments merit vacating the injunction and permitting Plaintiffs to file an amended complaint and a renewed motion for a preliminary injunction. *See* ECF No. 81 at 7. Defendants responded in opposition, ECF No. 78, and Plaintiffs replied, ECF No. 81. The Court held argument on April 10, 2025.

Contrary to Defendants' arguments, this Court has jurisdiction to rule on Plaintiffs' Rule 59 motion. In considering the motion, however, the Court concludes that Plaintiffs have not met their burden under Rule 59(e) to show that vacatur of the preliminary injunction is appropriate.

## DISCUSSION

### I.    Jurisdiction

Generally, the timely filing of a notice of appeal "divests the district court of its control over those aspects of the case involved in the appeal" because "a federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982); *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014). But certain motions filed in a district court have the effect of (1) extending the deadline for filing a notice of appeal, such that "the time to file an appeal runs for all parties from the entry of the order disposing of [that] motion," Fed. R. App. P. 4(a)(4)(A), or (2) suspending a previously filed notice of appeal, such that a previously filed notice "becomes effective . . . when the order disposing of the last such remaining motion is entered," Fed. R. App. P. 4(a)(4)(B)(i). One such motion is a timely motion "to alter or amend the judgment under Rule 59." Fed. R. App. P. 4(a)(4)(A).

The way the Federal Rules of Appellate Procedure ("FRAP") approach the effect of such motions on appellate and district court jurisdiction has evolved through several revisions of FRAP 4. As the Supreme Court explained in *Griggs*, under the 1979 version of FRAP 4(a)(4)(A), the "effect of a Rule 59 motion on a previously filed notice of appeal" was that the appeal "self-destruct[ed]." 459 U.S. at 61 (internal citations omitted). But deeming a previously filed notice of appeal to be a nullity had several unproductive consequences, including that an appellant had to file a *new* notice of appeal after disposition of the Rule 59 motion, which some appellants might not have realized, leaving them having waived appeal rights. *Id.* at 60.

2

In 1993, FRAP 4 was amended to remove the requirement of filing a new notice of appeal in that situation. Under the revised rule, the filing of a Rule 59 motion has the effect of "*suspend[ing]*" the notice of appeal "until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals." Fed. R. App. P. 4, 1993 Advisory Committee Note to Paragraph (a)(4) (emphasis added); *see also In re Rains*, 428 F.3d 893, 904 n.9 (9th Cir. 2005) (discussing the effects of the post-*Griggs* changes to FRAP 4). Thus, after the 1993 amendments, the notice of appeal no longer "self-destructs" when a Rule 59 motion is filed; instead, the filing of the motion suspends the notice until the Rule 59 motion is adjudicated. The current FRAP 4 is substantially similar in this regard.

Defendants argue that even though FRAP 4 expressly envisions the filing—and disposition—of Rule 59 motions before a notice of appeal is due, district courts do not have jurisdiction to adjudicate Rule 59 motions filed after a notice of appeal has been filed. ECF No. 78 at 3-4. Defendants are correct that in *Griggs*, the Rule 59 motion was filed before the notice of appeal. 459 U.S. at 57. But the *Griggs* Court's reasoning was not limited to that sequence. *See* 459 U.S. at 61 (providing that the "effect of a Rule 59 motion on a *previously* filed notice of appeal" was that "[t]he appeal simply self-destruct[ed]" and also noting that "a *subsequent* notice of appeal [was] ineffective if it [was] filed while a timely Rule 59 motion [was] still pending") (internal citation omitted) (emphases added). Moreover, the 1993 comments to FRAP 4 make clear that the Advisory Committee was intending to account for Rule 59 motions (or other specified district court motions) that are filed either before or after a notice of appeal. *See* Fed. R. App. P. 4, 1993 Advisory Committee Note to Paragraph (a)(4) (providing that "[a] notice filed *before* the filing of [a Rule 59 motion] or *after* the filing of a motion

but before disposition of the motion" "suspended [the notice of appeal] until the motion is disposed of") (emphasis added).

Moreover, the Supreme Court has expressly held—following *Griggs* and following the 1993 FRAP amendments—that FRAP 4, as "interpreted in *Griggs* . . . provides in express terms that [Rule 59] motions also serve to divest the appellate court of jurisdiction where the motions are filed after appeal is taken" and that "[t]he majority of post-trial motions, such as Rule 59 [motions], render the underlying judgment nonfinal both when filed before an appeal is taken (thus tolling the time for taking an appeal), and when filed after the notice of appeal (thus divesting the appellate court of jurisdiction)." *Stone v. I.N.S.*, 514 U.S. 386, 402-03 (1995). The Fourth Circuit has also recognized the effect of the timely filing of a motion listed in FRAP 4(a)(4)(A) after a notice of appeal has been filed. In *Carpenter Insulation & Coatings v. Statewide Sheet Metal & Roofing*, an unpublished opinion, after a notice of appeal was filed, a party filed a Rule 59 motion to reconsider the order granting summary judgment. 937 F.2d 602 (4th Cir. 1991) (table). The court concluded that the district court had "subject matter jurisdiction over the Rule 59 motion, notwithstanding the fact that a notice of appeal had already been filed." *Id.* at 602 n.*[1]; *see also* § 2821 Motions While Appeal Pending, 11 Fed. Prac. & Proc. Civ. § 2821 (3d ed.) ("The district court . . . retain[s] jurisdiction over motions for alteration or amendment of a judgment filed after a notice of appeal is given."). Finally, the fact that the order at issue is interlocutory rather than final does not change the analysis. *Gelin v. Balt. Cnty., Md.*, 122 F.4th 531, 537 n.3 (4th Cir. 2024)

---

[1] The *Carpenter* footnote refers to the "previously filed notice of appeal" "self-destruct[ing]" but that was because *Carpenter* was issued in 1991, before the 1993 amendments discussed above.

(explaining that "[n]either Appellate Rule 4(a)(4)(A) nor the Civil Rules . . . requires a 'final' judgment" to trigger the Rule 4(a)(4) analysis).

In arguing that, notwithstanding FRAP 4, this Court lacks jurisdiction to consider Plaintiffs' Rule 59(e) motion, Defendants rely on *Haefner v. Cnty. of Lancaster*, which is a five-sentence unpublished opinion. 116 F.3d 1473 (4th Cir. 1997) (table). In that case, the Fourth Circuit held that because the *pro se* plaintiff "had previously filed a notice of appeal to this Court of the underlying order, the magistrate judge was divested of jurisdiction to consider any subsequent motion to amend or vacate the appealed order." *Id.* (citing *Lewis v. Tobacco Workers' Int'l Union*, 577 F.2d 1135, 1139 (4th Cir. 1978)). But the unreported *Haefner* opinion (1) relies on *Lewis*, which predates the 1979 rule amendments and *Griggs*, (2) lacks any significant reasoning, and (3) does not discuss FRAP 4. Defendants also rely on *In re Murphy-Brown, LLC*, which dealt with a writ of mandamus in connection with a "gag" order. 907 F.3d 788 (4th Cir. 2018). The court in *Murphy-Brown* noted that "a district court loses jurisdiction to amend or vacate its order after the notice of appeal has been filed." *Id.* at 792 (quoting *Lewis*, 577 F.2d at 1139). But the motion filed after the notice of appeal in *Murphy-Brown* was to "rescind its initial gag order in favor of an option to request a new or modified gag order," *id.* at 794; that motion was not one listed in FRAP 4(a)(4)(A) (such as a Rule 59 motion), and so did not "suspend" the notice of appeal as Plaintiffs' motion here has done. The two other cases Defendants cite involve whether a district court, following a notice of appeal, retained jurisdiction to entertain a motion to intervene—also a motion

not listed in FRAP 4(a)(4)(A). *See FTC v. Lin*, 66 F.4th 164 (4th Cir. 2023); *Doe*, 749 F.3d 246.[2]

For these reasons, this Court has jurisdiction to rule on Plaintiffs' Rule 59 motion—and indeed must do so, to end the period in which the notice of appeal has been "suspended" by Plaintiffs' filing of their Rule 59 motion.

## II.    Whether to Vacate the Preliminary Injunction

Having concluded that this Court can, and must, adjudicate the pending Rule 59(e) motion, the Court now turns to its merits. "A Rule 59(e) motion may only be granted in three situations: '(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice.'" *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 378 (4th Cir. 2012) (quoting *Zinkand v. Brown*, 478 F.3d 634, 637 (4th Cir. 2007)). Here, Plaintiffs do not contend there has been any intervening change in controlling law, and also do not invoke the "error of law" or "manifest injustice" prongs. Instead, Plaintiffs contend that this Court should vacate its preliminary injunction because of "multiple factual developments that have taken place since the Court issued its Preliminary Injunction." ECF No. 77 at 3.

In their written motion and reply, Plaintiffs point (1) in general to "factual evidence of the Government's own interpretation and implementation of the Executive

---

[2] A similar analysis applies to motions to vacate a judgment filed under Rule 60(b). *See Fobian v. Storage Tech. Corp.*, 164 F.3d 887, 890-91 (4th Cir. 1999) (holding that "when a Rule 60(b) motion is filed while a judgment is on appeal, the district court has jurisdiction to entertain the motion, and should do so promptly," and explaining the procedure depending on whether the district court determines to deny the motion or is "inclined to grant" it).

Orders," ECF No. 81 at 9, and (2) specifically to "letters from the Department of

Housing and Urban Development that implement the [J21 Order's] Certification

Requirement," *id.* at 3 (referring to HUD correspondence to the City of San Francisco,

ECF No. 68-4). Plaintiffs state that, based on those developments, they "seek to amend

their complaint and pursue additional preliminary relief to prevent ongoing irreparable

harm against a more developed factual backdrop." ECF No. 81 at 9. Plaintiffs state that

they expect they would continue to assert facial claims only. ECF No. 86 at 26:16-19,

9:20-10:2, 25:6-20. But they believe that "evidence related to agencies' interpretation

and implementation of the Executive Orders" would further support the likelihood of

success on the merits of their already-asserted claims, and further that they "could

amend their complaint to add *new* facial claims" challenging the executive order

provisions at issue. ECF No. 81 at 7. The new "facial claims" Plaintiffs state they may add

in an amended complaint would be claims under the Administrative Procedures Act.

ECF No. 86 at 13:21-23.

      Plaintiffs argue that the new evidence would specifically address the concerns

expressed by two of the Circuit Judges on the panel that granted Defendants' motion to

stay pending appeal. Plaintiffs put it this way:

> The concurrences emphasized that their opinions spoke only
> to the record so far and that future developments might alter
> the outcome. In his concurrence, for example, Chief Judge
> Diaz noted he was satisfied "for now" that Defendants had met
> their stay burden, but explicitly "reserve[d] judgment on the
> extent to which the government relies on the Orders' savings
> clause provisions as it enforces the Orders' directives . . . ."
> Stay Order, No. 73 at 4, 4 n.1. In doing so, with respect to the
> savings-clause issue, he cited to a successful facial challenge
> to an executive order and characterized the case as "declining
> to give effect to savings clause where that clause 'in [] context'

would 'override clear and specific language,' and render
'judicial review a meaningless exercise . . . .'" *Id.* at 4 n.1
(quoting *City & Cnty. of S.F. v. Trump*, 897 F.3d 1225, 1239-
40 (9th Cir. 2018)). Similarly, in her concurrence, Judge
Harris concluded "for now" that Defendants had met their
burden, but offered the "caveat" that "[a]gency enforcement
actions that go beyond the Orders' narrow scope may well
raise serious First Amendment and Due Process concerns, for
the reasons cogently explained by" this Court. *Id.* at 7.

ECF No. 81 at 7-8.

This Court remains of the view that Plaintiffs have shown a strong likelihood of
success on the merits of their facial free speech and vagueness claims, as this Court
previously explained. ECF No. 44 at 28-55; ECF No. 61 at 1-3; ECF No. 66 at 5-6. The
Challenged Provisions forbid government contractors and grantees from engaging in
"equity-related" work and from "promoting DEI" in ways the administration may
consider to violate antidiscrimination laws; they demand that the "private sector" "end .
. . DEI" and threaten "strategic enforcement" to effectuate the "end[ing]" of "DEI"; and
they threaten contractors and grantees with enforcement actions with the explicit
purpose of "deter[ring]" such "programs or principles." J20 Order § 2(b)(i); J21 Order §
3(b)(iv)(B); J21 Order § 4(b). This Court remains deeply troubled that the Challenged
Provisions, which constitute content-based, viewpoint-discriminatory restrictions on
speech (in addition to conduct), have the inherent and ineluctable effect of silencing
speech that has long been, and remains, protected by the First Amendment. And they do
so through impermissibly vague directives that exacerbate the speech-chilling aspects of
the Challenged Provisions.

Historically, the metaphor used to describe the effect of laws that restrict speech
is "chill." The more apt metaphor here is "extinguish." Part of the explicit purpose and

effect of the Challenged Provisions is to stifle debate—to silence *selected* viewpoints, *selected* discourse—on matters of public concern. They forbid government contractors and grantees from engaging in discourse—including speech such as teaching, conferences, writing, speaking, etc.—if that discourse is "related" to "equity." And they direct the "private sector" to "end" diversity, to "end" equity, and to "end" inclusion. *See* J21 Order § 4(b) (directing agencies to "encourage the private sector to end . . . DEI"). "End" is not a mere "chill." "Deter[rence]" is not a side-effect of the Challenged Provisions; their *explicit* goal is to "deter" not only "programs" but "principles"—*i.e.* ideas, concepts, values. After all, the opposite of inclusion is exclusion; the opposite of equity is inequity; and, at least in some forms, the opposite of diversity is segregation.

The government has apparently concluded, and takes the position, that particular employment practices, for example related to hiring or promotion, constitute discrimination in ways that violate Title VI or Title VII. But the Challenged Provisions do far, far more than announce a change in enforcement priorities within the bounds of existing law. For as vague as the Challenged Provisions are about some matters, *see* ECF No. 44 at 36-44, 53-55, there can be no serious question that the direct and necessary impact of those provisions—and purposeful, to the extent that matters—is to extinguish discourse throughout civil society on what makes our society diverse, the different perspectives we each bring to bear based our respective upbringing, family history, community, economic circumstances, race, national origin, gender, ability, sexual orientation, or the like. These executive directives seek to extinguish discourse about our shared history. They seek to extinguish discourse about how to strive toward greater inclusivity, or even what that means, or whether that is a worthy goal.

The fact that the Challenged Provisions also target conduct, in addition to speech (and ideas), does not diminish the Challenged Provisions' unmistakable edict that persons working for government contractors or grantees, or any person working in the private sector for that matter, must not express certain viewpoints on a swath of topics related to inclusion, equity and diversity. And they do all of that on their face. While a "government official can share her views freely and criticize particular beliefs," and seek to "persuade" others (even "forcefully") of the merits of a particular view, officials may not "use the power of the State to punish or suppress disfavored expression." *Nat'l Rifle Ass'n of Am. v. Vullo*, 602 U.S. 175, 188, 191 (2024).

Other courts have agreed. For example, in *Chicago Women in Trades v. Trump*, -- F. Supp. 3d --, Case No. 25 C 2005, 2025 WL 1114466 (N.D. Ill. April 14, 2025), the court held that the Certification Provision *undisputedly* "attempts to regulate grantees' speech outside of their federally-funded programs," and further restricts speech on the basis of content and viewpoint, for example prohibiting "programmatic activity [that] 'promote[s] DEI' (whatever that is deemed to mean)." *Id*. at *11 (second alteration in original); *see also id*. at *20 (granting a preliminary injunction with respect to the Certification Provision because "rather than spend their resources to challenge their patron in court or risk False Claims Act litigation, it is more likely that grantees and contractors will take the safer route, keep their heads down, and choose to simply stop speaking on anything remotely related to what the government might consider as promoting DEI or equity").[3]

---

[3] The *Chicago Women in Trades* court held that the plaintiffs there had not shown a likelihood of success on those plaintiffs' claim challenging the Termination Provision on First Amendment grounds, 2025 WL 1114466 at *12-*14; Plaintiffs here did not assert a

In the education context, the U.S. District Court for the District of New Hampshire explained in detail why prohibiting "DEI," requiring certification, and threatening enforcement actions for violations combine to threaten "the 'supremely precious' yet 'delicate and vulnerable' nature of the right to free speech in our country," *Nat'l Educ. Ass'n v. U. S. Dep't of Educ.*, -- F. Supp. 3d --, No. 25-cv-091-LM, 2025 WL 1188160, at *18 (D.N.H. Apr. 24, 2025) ("*NEA*") (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)), particularly given that they "sweep in a wide swath of conduct while leaving individual enforcement decisions to the subjective determinations of enforcement authorities." *Id.* at *19 (citing *Kolender v. Lawson*, 461 U.S. 352, 353-54 (1983)); *see also United States v. Williams*, 553 U.S. 285, 306 (2008) ("What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been proved; but rather the indeterminacy of precisely what that fact is."). As the *NEA* court explained, a prospective prohibition on speech, based on the content of such speech or the viewpoint of the speaker, constitutes nothing short of "censorship." 2025 WL 1188160, at *13-*14. And as Judge Gallagher explained in a similar case in this district, although the government is "entitled to its own views, including on how court cases and laws should be interpreted," and to "develop and pursue its own enforcement priorities within the law," it may not "blur the lines between viewpoint and law" in ways that prohibit (or could be reasonably perceived to prohibit) "conduct, speech, perspectives, lessons, programs, activities or

---

First Amendment claim with respect to the Termination Provision. As to the *Chicago Women in Trades* court's holding with respect to those plaintiffs' due process vagueness claim challenge to the Termination Provision, *id.* at *14-*16, this Court disagrees with that analysis, for the reasons explained previously. *See* ECF No. 44 at 38-44.

meetings" on the basis of content or viewpoint. *Am. Fed'n of Teachers v. Dep't of Educ.*, -- F. Supp. 3d ---, No. SAG-25-cv-628, 2025 WL 1191844, at \*10-\*11, \*20 (D. Md. Apr. 24, 2025).

But that all goes to the merits of Plaintiffs' request for a preliminary injunction. Which side is likely to prevail on appeal is not the question presented by Plaintiffs' motion to vacate. The question is whether Plaintiffs have satisfied the Rule 59 "new evidence" standard. The problem for Plaintiffs is that although they have pointed to new evidence and claims they state they would present in an amended complaint and renewed motion for a preliminary injunction, they have not shown that any of it would materially alter the analysis of whether they are entitled to a preliminary injunction.

Plaintiffs explained at the hearing on their motion to vacate that the new evidence would show how Defendants and other agencies have interpreted and implemented the executive orders since the preliminary injunction was entered. But this Court already had ample evidence before it at the time the Court issued its preliminary injunction showing the ways the government was implementing each of the Challenged Provisions. *See, e.g.*, ECF No. 27-1 at 9-10, 17-18 (citing examples from five agencies of implementation of the Termination Provision); ECF Nos. 27-10 to 27-18 (exhibits illustrating implementation of the Termination Provision); ECF No. 27-1 at 10 (citing implementation of the Certification Provision); ECF Nos. 27-20 (exhibit illustrating implementation of the Certification Provision); ECF No. 27-1 at 10-11 (citing implementation of the Enforcement Threat Provision); ECF No. 27-21 (exhibit illustrating implementation of the Enforcement Threat Provision); ECF Nos. 39-8, 39-9, 39-13 (guidance documents from multiple agencies regarding implementation of the

12

Challenged Orders); ECF Nos. 39-10 to 39-12, ECF No. 43-5 (letters to grant recipients regarding implementation of the Challenged Orders).

Plaintiffs request an opportunity file an amended complaint that may contain one or more additional causes of action under the Administrative Procedures Act. But the causes of action at issue in Plaintiffs' anticipated amended complaint and renewed motion for a preliminary injunction would be largely the same as those currently asserted. Plaintiffs confirmed that if the Court were to vacate the preliminary injunction and allow them to file an amended complaint, they would continue to allege facial challenges to the Challenged Provisions of these executive orders. Plaintiffs have not shown that adding an Administrative Procedures Act would materially alter the preliminary injunction analysis. And with respect to the relief Plaintiffs seek, they state that such renewed motion for a preliminary injunction would continue to seek the "broadest relief possible," ECF No. 86 at 3:20, and the preliminary injunction Plaintiffs envision seeking would be subject to only "small changes" as compared to the current preliminary injunction. *Id.* at 13:19.

The Court of Appeals will soon be deciding whether Plaintiffs are entitled to a preliminary injunction based on Plaintiffs' facial claims challenging the executive orders at issue, as this Court held they are. Plaintiffs have not come forward with the type of new evidence or new claims that would justify vacatur of the preliminary injunction under Rule 59(e). For these same reasons, Plaintiffs have not shown that judicial resources (or the parties' resources) would be conserved by vacating the preliminary injunction, only to consider a renewed motion for a similar injunction based on similar facial challenges. While the record may be more developed in that circumstance, Plaintiffs have not shown that a new injunction (and its likely appeal) would place the

13

courts and parties in a significantly different posture than the present one. The appropriate course is to deny the Rule 59(e) motion and allow the parties to brief the issues before the Fourth Circuit.

## CONCLUSION AND ORDER

Upon consideration of the motion to vacate the preliminary injunction, ECF No. 77, and the response and reply thereto, and after oral argument on April 10, 2025, and for the reasons provided above, it is ORDERED that the motion is DENIED.

Date:  May 1, 2025

_____/s/_____
Adam B. Abelson
United States District Judge